THLINKET PACKING CO. v. HARRIS & CO.

(First Division. Juneau. June 6, 1916.)

No. 1440-A.

1. FISH ⊗⇒10(2)—FISH TRAPS—LICENSES.

The plaintiff sought to secure an injunction against the defendants constructing a fish trap on a site previously chosen by the plaintiff, upon the ground that plaintiff had a prior territorial license to operate a fish trap at that place. *Held,* one does not need a territorial license to authorize him to construct a fish trap, but only for the purpose of engaging in the business of catching fish by means of a trap. There is no provision of law whereby the officers of the territory have authority to segregate the site from the public domain or confer any title thereto on plaintiff.

2. INJUNCTION ⊗⇒136(3)—FISH TRAPS—NUISANCES.

The owner of a lawfully located and constructed fish trap may maintain injunction against another, who seeks to construct another fish trap within a prohibited distance from his trap on account of some special injury which the building of such second trap would do to him; but the owner of the first trap cannot enjoin the building of the second trap simply because the latter is contrary to law, without showing some special damage to himself; for if only a violation of law is shown, and no special injury is shown, the prohibited trap would be a public nuisance, and not a private nuisance, and so not to be abated at the suit of an individual.

On the 24th of March, 1916, both parties hereto were engaged in constructing fish traps in the navigable waters of the United States in a small indentation locally known as Ground Hog Bay. On that day plaintiff brought this suit to obtain a decree enjoining the defendants from interfering with it in the construction of its fish trap, and on March 27th, on an ex parte application, it procured an order herein restraining the defendants from doing certain things. Defendants evidently considered this as a command that they cease work on the fish trap which they were constructing. In compliance with their understanding of the injunction, they ceased work and have not since resumed it. However, at the time of the service of said restraining order the trap of the defendants was practical-

ly completed, needing only the web. Meanwhile the plaintiff continued the construction of its trap, but it sheered the line of the trap off a little to one side on account of the work that was being prosecuted by the defendants.

As the matter stands at this hearing, both traps are virtually complete; but, as the fishing season has not opened, neither one is in operation.

Defendants have filed a cross-complaint, denying any priori-. ty of right in plaintiff, alleging that they themselves are entitled to priority, and that the plaintiffs' trap will cork their own and render the same valueless.

The case is here now on the merits.

The evidence on behalf of plaintiff is in substance as follows: In 1915, the plaintiff company, having, through its officers and agents, inspected Ground Hog Bay, concluded that in the spring of 1916 it would build a fish trap there. Page 118. Accordingly, in February, 1916, plaintiff sent a surveyor to the locality, who, on the 20th of that month, began to make a survey of what is referred to in the pleadings and evidence as "trap site No. 14, Thlinket Packing Company." The sum and substance of the doings of the surveyor, however, was simply the establishment, by surveys on the shore, of the locus of a shore pile to indicate the locus of plaintiff's proposed trap, so far as markings on the shore can be taken to indicate the locus of a structure proposed to be erected many hundreds of feet therefrom out in the navigable waters. On February 19, 1916, the plaintiff procured a license from the territorial treasurer of Alaska, in compliance with chapter 76 of the Session Laws of 1915, and on or about February 22, 1916, it drove a few piles for the purpose of indicating that it claimed the locus as a fish trap site, and on one of said piles placed a notice: "T. P. Co. Trap No. 14, Lic. 365." Plaintiff did nothing further towards the physical construction of a trap until March 21, 1916, but on March 14, 1916, plaintiff was granted a permit from the War Department, under the act of Congress approved March 3, 1899 (30 Stat. 1121, c. 425), same being the Rivers and Harbors Act of that year. On March 17, 1916, plaintiff learned that the defendants were laying claim to the location and that their pile driver was driving piles on said location. Accordingly, on or about the 21st of March, 1916, plaintiff reappeared on the scene and resumed the driving of piling to complete the trap which (it says) it had contem-

plated building. From March 17th to March 25th both sides were driving piles, striving to build a fish trap.

The evidence on behalf of the defendants is to the effect that in 1915 they likewise concluded to build a fish trap at or about the locus quo, and with that end and purpose in view, on February 5, 1916, applied for a permit from the War Department, which was granted on March 2, 1916. Defendants did not procure a territorial license until April 1, 1916, although they had, prior to the institution of this suit, entered into an arrangement (whether valid or not) with the chief counsel for the territory, whereby the formal issuing of a license was dispensed with until certain litigation designed to test the license tax law of the territory was determined.

No evidence was introduced on either side showing, or tending to show, that either trap as constructed at all interferes with, or detracts from the value of, the other trap, or that either party is doing, or threatening to do, or is about to do, any injury to the other, or to perpetrate any obstruction to or interference with the enterprise of the other.

Winn & Burton, of Juneau, for plaintiff.
Cheney & Ziegler, of Juneau, for defendant.

JENNINGS, District Judge. It is apparent that, but for the temporary injunction issued, defendants would have had their trap complete for operation before plaintiff had its trap in that condition; and as the matter stands now plaintiff is insisting that it has a right to have the injunction made permanent, even though the effect of said injunction will be to allow plaintiff to operate while defendants are forbidden to operate. Defendants insist that they should have an injunction against plaintiff.

There is no ground for the interposition of equity on behalf of plaintiff, or, for that matter, on behalf of the defendants, either. Before a court of equity will enjoin any one from doing anything, the right of the person who seeks the injunction must be clear. Plaintiff bases its claim for an injunction on the contention that the territorial license, issued by the territorial treasurer, and the act of Congress of June 26, 1906 (34 Stat. 478, c. 3547), which prohibits the driving or constructing of any trap or other fixed fishing appliance within 600 yards laterally or 100 yards endwise of any other trap

or fixed fishing appliance (Compiled Laws, § 262), taken together, virtually confers an exclusive right of fishery at the locus in question.

Let us examine this contention:

As to the territorial license: That license confers no right of property. The act of the Legislature under which such licenses are granted is nothing more nor less than the imposition of a license tax on persons engaging in certain businesses, specifically (in this case) the business of fishing by means of fish traps. One does not need a license from the territory to construct a fish trap. It is only when one engages in the business of catching fish by means of the fish trap that a license is required. The territorial treasurer would probably give as many licenses as there are people who offer to pay for them. The territory does not care where the business is conducted. It is true that the act requires the applicant to state generally the place where, but that requirement manifestly is for the mere purpose of fixing a way to identify the license granted, so that the license money may not be collected twice from the same person. There is no provision made by that act, or by any other act, whereby the officers of the territory segregate the proposed fish trap location from the public domain, or keep any record of it as a muniment of title or evidence of property rights. The act does not purport to confer any rights, nor does it pretend to settle the conflicting claims of private individuals to the same piece of water, to be used for fishing.

And so with the act of June 26, 1906. That was an act of Congress, passed for the conservation of the fish supply, and has nothing to do with private rights. It simply provides that no fish trap shall be built within so many feet of another fish trap; but, if two fish traps are so built, the act does not undertake to say which fish trap is lawful and which is not. It may be true that the owner of a lawful fish trap may enjoin the building of another fish trap (an unlawful one) within the prohibited limits, on account of some special injury which the building of such trap will do to him, but the owner of the first trap cannot enjoin the building of the second trap simply because the latter is contrary to law, without showing some special damage to himself; for, if only a violation of law is shown, and no special injury is shown, the prohibited trap would be a public nuisance, and not a private nuisance, and so not to be abated at the suit of an individual.

Plaintiff's counsel has cited certain cases from the state of Washington which seem to hold that provisions of this kind create an exclusive right of fishing within the area described by the license, but an investigation of the statutes of the state of Washington shows very plainly that the cases are not applicable. For instance, in the first place, in the state of Washington no fish trap can be constructed without a license. 2 R. & B. Code of Washington, § 5191. In the second place, the statute expressly provides that a map must be filed containing—

"a description of said fishing location sufficient for its ascertainment and identification on the premises; such map must be certified by the engineer who made the survey, to be a true and correct map of the fishing location as shown, which is platted thereon from his survey thereof, made on behalf and at the request of the occupant or claimant. * * * Such map shall also contain a certificate of the occupant or claimant of said location, stating that he claims the fishing location shown on the map, and specifying the date and number of the license under which said location is held. * * * Such map with the certificates thereon shall be filed in the office of the county auditor of the county in which such fishing location is situated, and shall from the date of its filing constitute full and complete notice that the location shown upon said map is owned, held, occupied and claimed by the person, firm or corporation designated thereon as occupant or claimant. A duplicate copy of such map shall also be filed * * * with the fish commissioner of the state of Washington, or of the district within which such location is situated. And it shall be the duty of all county auditors and fish commissioners, in whose office any such maps may be offered for filing, to receive and safely keep same on file in their respective offices. They shall also keep a proper and convenient index of all such maps, showing the time and dates of the filing, the names of the occupants or claimants on whose behalf such maps are filed, and the serial numbers of the maps in the order filed, all of which must be endorsed on the respective maps when filed."

Then the said statute further provides that:

"From and after the filing of any such map in the office of any such county auditor, the occupant or claimant of the fishing location thereon shown, and his heirs, successors and assigns, shall have the exclusive right to occupy, maintain and fish such location, to renew the licenses therefor, and to mortgage, sell and transfer such right, during such time as he or they shall comply with the requirements of the law of the state of Washington, pertaining thereto in other respects." Id. § 5214.

Thus it will be seen that the Washington cases cited depend upon statute.

"As a general proposition, a claim of an exclusive right to fish in a certain part of navigable waters must be based on some statutory enactment of the state having jurisdiction over such waters." 11 R. C. L. § 11, p. 1025.

"A statute will not be construed to grant a privilege so repugnant to the common rights of the people unless its language clearly requires such a construction." Id. § 11, note 20.

Now, in the district of Alaska, outside of the acts cited above, there is no statute on the subject of fish traps or fishing; i. e., there is no statute indicating the method by which fish trap sites can be acquired, nor adjusting the relative rights of fish trap owners. There is, therefore, no law governing this case, unless it be the law of possession.

Defendants contend that some peculiar equity or priority inures to them by virtue of the fact that their permit from the War Department antedates the War Department permit issued to plaintiff. This contention cannot be sustained. It has been repeatedly held by the courts that such permit confers no right of property. The act was passed in 1899, and is a general act for all the navigable waters of the United States. Its object and purpose is to keep such waters free from obstructions. It has nothing to do with fishing sites or trap locations, except incidentally as they may interfere with navigation. The very language of the permit itself is to this effect:

"That this authority does not give any property rights, either in real estate or material, or any exclusive privileges, and that it does not authorize any injury to private property or invasion of private rights, or any infringement of federal, territorial or local laws or regulations, nor does it obviate the necessity of obtaining territorial assent to the work authorized. It merely expresses the assent of the federal government so far as concerns the public rights of navigation."

And it expressly refers to the decision of the Supreme Court on the subject, to wit, Cummings v. Chicago, 188 U. S. 410, 23 Sup. Ct. 472, 47 L. Ed. 525. It is nothing more nor less than a simple statement, in substance and effect, that the person having the permit of the Secretary of War may rest assured that the general government will not raise the question that the structure which he contemplates interferes with navigation.

As there is no statute indicating the method by which fish trap sites in Alaska waters can be acquired, and no statute adjusting the rights of fish trap owners inter sese, we are forc-

ed to inquire whether there is any general principle of law governing the case. We are urged to hold that the law of possession applies, and that he who is prior in time should be adjudged to be prior in right. No doubt that principle is to be applied so far as fish traps actually constructed are concerned, for any one who actually incloses a space of water and is in the actual use and occupation of it for fishing purposes may maintain his inclosure as against any one who cannot show a better right; but this is so because he has an actual possession, a possession which, if it were land, would be called a pedis possessio. He has his foot upon that part of the ocean, and he is using it for the purposes for which it is fit, and consequently he has a superior right, because he is there first. He has the right, because he is in possession of and actually using that particular area of water; but this is far from saying that any one would gain a priority simply because he was the first to put in a few piles in a wide stretch of navigable waters, inclosing nothing, or was the first to stand upon the shore and say:

"I intend to fish, in this particular place. I intend to build a fishing appliance in the waters off this shore." (It seems that both parties attempted to do this, but the defendants first began actual construction of a fish trap, or worked faster, and thus, at the time of the issuance of the preliminary injunction, had their trap more nearly to completion than was that of the plaintiff.)

The right of fishery in the navigable water is a common right. It is a right of almost an equal grade with the right of navigation. Certainly it is an older right. As was said in the case of Pacific Steam Whaling Company v. Alaska Packers' Association, 138 Cal. 636, 72 Pac. 163:

"The right of fishery in the waters of the ocean, whether in the open sea, or where the waters ebb and flow over tidelands, is a public right which may be exercised by any citizen. * * * In its very nature, the exercise of the right of fishing in the public waters of the ocean is not, and cannot be, exclusive. Its exercise, no matter by whom or for what length of time, is only the exercise of a public right. There can be no possession, for the purpose of fishery, of an area of land covered by the waters of the ocean that is at all analogous to an actual possession of a tract of upland which might give the possessor a right of action against a mere trespasser. One who exercises this public right of fishery in the sea does not by that make himself a trespasser."

And even as to prescription and custom:

"Prima facie, the people have a common right of fishing in public waters, and the burden is on one claiming an exclusive right by prescription to show the facts giving him such right. Fishermen's customs will not give one a legal several right of fishery. Thus, a custom among the fishermen in a certain vicinity to the effect that a shore owner has the exclusive right to fish to the middle of a navigable stream opposite his land, is unavailable as a means of acquiring a several fishery within the limits prescribed, though he has cleared out a fishing place in the bed of the stream." 11 R. C. L. § 13, p. 1028.

No equity is shown for an injunction for either side. By the statements of counsel, plaintiff does not purpose nor wish to swing its trap back into the position where it says it would have been put, but for the actions of the defendants. Plaintiff relies upon the claim of an exclusive franchise and on priority. We have seen that it has neither. There is no evidence that either trap corks the other or interferes with the fishing. For aught that appears, one trap is as good as, and no better than, the other; and there is no evidence that either party purposes, or has threatened, or is about to commit, any injury to the other.

It follows that the temporary injunction will be dissolved, and the complaint and cross-complaint dismissed; neither side to recover costs.