HARRIS & CO. v. THLINKET PACKING CO.

(First Division. Juneau. June 29, 1916.)

No. 1472-A.

1. JUDGMENT ☞570(5)—ESTOPPEL—DISMISSAL WITHOUT PREJUDICE.
    Where a cause of action is dismissed for a failure of proof only, and not going to the merits of the cause of action, it will be treated as a dismissal without prejudice and will not constitute a bar to the same cause of action in a subsequent suit.

2. JUDGMENT ☞720—ESTOPPEL—RES JUDICATA.
    In a second controversy between two parties, if the cause of action be the same as it was in the first controversy, the judgment is an estoppel both as to all things that were litigated and of things that might have been litigated; but if the cause of action is not the same, then the judgment in the former action is

☞See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

an estoppel only upon those matters in issue or points controverted, upon the determination of which the finding was rendered.

**3.** INJUNCTION ☞136(2)—FISH TRAPS—LOCATION.

Where plaintiff first lawfully located and constructed a fish trap in the waters of Alaska, and the defendant thereafter attempted to locate and construct another within a distance prohibited by law, the construction of the second trap will be enjoined at the suit of the plaintiff whose lawful trap is injured in its operation thereby.

**4.** INJUNCTION ☞136(2)—FISH TRAPS.

A. located a fish trap site in the waters of Alaska, and had begun the actual physical erection of a pound net or fish trap thereon in compliance with law, and had the same virtually completed and ready for fishing, when enjoined at the suit of B. on an ex parte application. Thereupon B. began the erection of a similar pound net or fish trap within a distance from A.'s trap prohibited by the statute. On a subsequent suit, brought by A. against B. to enjoin the completion of B.'s trap, *held*, B. could not, by tying A.'s hands in the first suit, make the structure erected by him within the prohibited distance a lawful one. B.'s trap is an illegal structure, which causes special injury to A., and gives him a right to an injunction both mandatory and preventive.

Z. R. Cheney and A. H. Ziegler, both of Juneau, for plaintiff.
J. R. Winn and N. L. Burton, both of Juneau, for defendant.

JENNINGS, District Judge. Defendant pleads that there is another action pending, in that in cause No. 1440–A, files of this court, plaintiff in this suit filed a cross-complaint against defendant in this suit, wherein were litigated and determined between the parties hereto the very same issues which are here presented, and in that the time for appealing from the decree in that case has not yet expired.

As supporting this plea defendant relies upon the last clause of section 1315 of the Compiled Laws of Alaska of 1913, which is as follows:

"An action is deemed to be pending from the commencement thereof until its final determination upon appeal, or until the expiration of the period allowed to take an appeal."

That section is identical with, and was taken from, section 514, Hill's Code of Oregon, and the latter was, by the Oregon

---

☞See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

court in 1887, held not to be applicable to a case like this, citing Day v. Holland, 15 Or. 464, 15 Pac. 855, followed by Judge Deady in Neal v. Foster (C. C.) 34 Fed. 500. Notwithstanding that this inquiry arises, to wit: As the plea sets forth the facts of another adjudication between the same parties and for the same subject-matter, may not effect be given to it as a plea of res judicata, notwithstanding the pleader has pleaded it under the name of "another suit pending"?

The case of Cromwell v. Sac, 94 U. S. 351, 24 L. Ed. 195, is a leading one on a portion of the contention. It lays down the principle that in a second controversy between two parties, if the cause of action be the same as it was in the first controversy, the judgment is an estoppel both as to all things that were litigated and of things that might have been litigated, but that, if the cause of action is not the same, then the judgment in the former action is an estoppel only upon those matters in issue or points controverted, upon the determination of which the finding was rendered. This much may be regarded as settled, but even so the inquiry is then to be made, when is the second controversy for the same cause of action as the former controversy? I think that what is said on this point in C., B. & Q. Ry. v. Weil, 183 Fed. 957, 106 C. C. A. 296, is applicable here. In that case the railroad company sought an injunction restraining certain ticket scalpers from dealing in round-trip nontransferable tickets issued at reduced rates. A plea was interposed that a like suit had been instituted against defendants by plaintiffs and an injunction had been granted substantially like the one sought in the suit at bar. The court say:

"The gravamen of the case consists in the present and threatened future invasion by the defendants of the right of the complainant to issue round-trip nontransferable tickets at reduced rates, and to demand that the restriction upon their use be respected. In this regard the present bill is much the same as the one in the state court, and the prayer in each is much the same. We come, then, to the points of difference. The suit in the state court was commenced September 7, 1905. The bill therein charged that the defendants had been and were violating the rights of the complainant, and were threatening and intending to continue to do so; and the decree, being for the complainant, necessarily determined those matters in its favor. But whether any of the defendants subsequently violated or threatened to violate the rights of the plaintiff are matters which were not determined by that decree. The present bill was filed more than two years thereafter, and makes no reference to that suit, or to any acts

anterior to that decree, but it does charge that all of the present defendants are violating the rights of the complainant, and are threatening and intending to continue to do so. * * * While the defendants interposing the plea insist that as to them the decree in the former suit is determinative of all the matters charged in the present bill, and is a bar to its prosecution, it must be ruled otherwise; for obviously that decree is not determinative of what has been done and threatened since its rendition. Not only so, but the rule against vexing one by repeated and unnecessary litigation is not always available to prevent a second suit in respect of the same matter. * * * In Insurance Co. v. Bruner's Assignee, 96 U. S. 588 [24 L. Ed. 737], the court, although observing that 'at law the pendency of a former action between the same parties for the same cause is pleadable in abatement to a second action, because the latter is regarded as vexatious,' quotes with approval Lord Hardwicke's statement in Foster v. Vassall, 3 Atkyns, 587, that 'the general rule of courts of equity with regard to pleas is the same as in courts of law, but exercised with a more liberal discretion.' The existence of this discretion, its extent, and the purpose with which it is exercised are well shown in Bates' Federal Equity Procedure, vol. 1, § 263, where, following closely the decision of the Supreme Court of Connecticut in Hatch v. Spofford, 22 Conn. 485, 58 Am. Dec. 433, the author says: 'This rule * * * is not a rule of unbending rigor, nor of universal application, nor a principle of absolute law. It is rather a rule of justice and equity, generally applicable, and always where the two suits are virtually alike and in the same jurisdiction. In applying the rule it should be kept steadily in mind that a plea in abatement, being a dilatory plea, is not like a plea of payment or satisfaction, or of some other matter in bar of the merits of the claim, which would find more favor; but its object is to cause postponement and delay, and the language of the plea is that the second suit is unnecessary and vexatious, and should be abated. A second suit is not, of course, to be abated and dismissed as vexatious; but all the attending circumstances are to be first carefully considered, and the true inquiry will be whether or not the aim of the plaintiff is fair and just, or oppressive and vexatious. If the plaintiff, by a second suit, can place his claim in a more favorable condition for obtaining redress, he should be permitted to do it.' * * * We conclude that in equity the rule in respect of such pleas, although analogous to the rule at law, is not absolute or inflexible, but is a rule of justice, which is designed to be so administered as to prevent the oppression and unnecessary vexation of defendants, and yet to accord to complainants the right to pursue any remedy which is reasonably essential to their complete and adequate protection."

As to the vexation of the defendant here, it must be borne in mind that in 1440–A the plaintiff did not hale the defendant into court. Quite the contrary; the plaintiff here was the defendant in that suit. Being then already in court, brought

there by the plaintiff, he asked for some affirmative relief against the plaintiff there. The only affirmative relief that he asked for was "a mandatory injunction against plaintiff requiring plaintiff to remove all obstructions, piling or other structures from the location which are within 1800 feet laterally or 600 feet endwise of trap No. 11 owned by the defendant herein." (See answer in 1440–A.) He need not have done even this, for he might have been content simply to deny the plaintiff's equities and to depend upon another suit for the establishment of his own equity to have the piles then standing removed. He was unable to get relief on his cross-complaint in 1440–A because he did not prove that the piles which plaintiff in 1440–A had upon the premises interfered with his property. No evidence on this point having been introduced, defendant there (plaintiff here) in effect abandoned his cross-complaint. Under our Code a dismissal for mere failure of proof on some essential point is not a dismissal on the merits. Section 1210, Compiled Laws of 1913. Now, it would have been the correct practice for the defendant in 1440–A to have asked that the dismissal be "without prejudice"; but I find it laid down that notwithstanding the order of dismissal does not purport to be without prejudice, nevertheless it is usually to be taken and considered as a dismissal without prejudice when, as a matter of fact, the dismissal is not on the merits. 14 Cyc. 454b, and cases cited in note 20.

Now, what was determined in case No. 1440–A? Only this —that there was no evidence that the piling which had then been driven would interfere with the trap of defendant. It was not decided that no structures which defendant might drive at any future time would not cork the trap of defendant in this case (plaintiff in that case); it was not decided that, even if such structures would cork defendant's trap, the defendant would be entitled to an injunction; it was simply decided that at least one essential for an injunction had not been proven, and without that proof no injunction could be granted in any event. That essential being entirely lacking in the case made by both plaintiff and defendant in 1440–A, it was not necessary for the court to pass upon the other phases of the case. It might have been that, even if that essential had been proven, still defendant would not have been entitled to the injunction which he asked for, which was an injunction against existing obstructions; but, however that may be, the court, finding no

5 A.R.—32

evidence on that one essential, proceeded no further, but at once dismissed both the complaint and the cross-complaint. It has already been said that that dismissal, being for failure of proof only, and not going to the merits of the cause of action, will be treated as a dismissal without prejudice; but, even without so treating it, it is evident that a structure built on the 17th of June (see complaint filed June 19th in case at bar) could not be the subject of an action brought on the 14th of April (date of filing cross-complaint in 1440-A). Besides, consider the condition of the parties when the cross-complaint in 1440-A was filed and when that cause was tried. The defendants there (plaintiff here) were under an ex parte injunction obtained by defendant here (plaintiff there), by which they were forbidden to enter upon the premises, and at that time the run of fish had not yet begun. When plaintiff here brought his cross-complaint in 1440-A, he could not have obtained an injunction against these piles, because they were not in existence, and no showing could have been made that on the 17th of June they would be in existence and would interfere with plaintiff's trap. In Cromwell v. Sac, supra, it was said:

"Various considerations, other than the actual merits, may govern a party in bringing forward grounds of recovery or defense in one action, which may not exist in another action upon a different demand, such as the smallness of the amount or the value of the property in controversy, the difficulty of obtaining the necessary evidence, the expense of the litigation, and his own situation at the time. A party acting upon considerations like these ought not to be precluded from contesting in a subsequent action other demands arising out of the same transaction."

By section 1314 of the Compiled Laws of Alaska of 1913 it is provided that:

"Successive actions may be maintained upon the same * * * transaction whenever, after the former action, a new cause of action arises therefrom."

Applying that to this case, we find that in 1440-A the primary right of the defendant there (plaintiff here) is alleged to be the right to have his trap free from obstructions. The transaction then and there complained of was the invasion of that right by the driving of piles by plaintiff prior to April 14th. The new cause of action (the cause of action in the case

at bar) is the driving of piles on June 17th. I think that, whether the plea interposed here be called a plea of another action pending or a plea of res judicata, it cannot be sustained.

On the merits I find all the material allegations of the complaint to have been sustained by the evidence. Plaintiff is entitled to an injunction, not because defendant anticipates him in the taking of fish, but his right to an injunction is based on the fact that his trap is lawful and defendant's trap is unlawful, and he suffers special injury from defendant's unlawful trap. If there were no act prescribing within what distance of each other two traps may be built, plaintiff would have no equity for an injunction by reason merely of the fact that defendant anticipates him in the catching of fish. The interference which would justify an injunction would "in the absence of statute" have to be a direct interference with plaintiff's present possession of the fishery, or injury to the fishing gear, or the like, for, in the absence of statute, one person has just as much right to erect a fish trap in the navigable waters as another person, and at such place as to him seems most likely to catch fish. In the absence of statute the right of fishery is a right common to all our people, and "no person can acquire a right of fishery superior to another person unless he has gone into the common waters, and set up and established his pounds and nets, and taken possession of the line which those pounds and stakes include, and with which a stranger cannot directly interfere." 2 Farnham on Waters and Water Rights, § 39. But the statute (Compiled Laws, § 262) has changed all this, and has made it unlawful for one person to construct a trap within 1,800 feet laterally of another trap or fixed fishing appliance. The evidence shows that plaintiff had begun the actual, physical erection of the fish trap No. 11, and had the same virtually completed and ready for fishing, when enjoined in 1440–A, on the ex parte application of defendant. Any erection of a fish trap, then, by defendant, within 1,800 feet of plaintiff's trap, was an unlawful structure. Defendant could not, by tying plaintiff's hands, in 1440–A, make the structure erected by him a lawful one. Therefore, whether the work done by plaintiff on June 17th be considered as the building of a new trap or the repairing of an old trap, it is work done on an illegal structure—a structure which causes a special damage to plaintiff and gives him a right to an injunction, both mandatory and preventive. In such cases every

distinct violation, if accompanied with special injury, is a new cause of action.

I cannot think that the placing by defendant on February 18th of a few piles in the water near the shore, and the placing of a sign thereon, was anything but the placing of "location piles" so called. It did not constitute a fish trap, nor the beginning of a fish trap. It is in evidence that fish traps go out in the winter months. It is unthinkable that a party would begin the erection of a fish trap in Alaska in the month of February, by placing a few piles near the shore, and then go off and leave the whole thing until the 21st of March if he was really engaged in the building of a fish trap. The placing of these piles, in my opinion (and I think the evidence sustains the opinion), was simply a notice that defendant intended to build a fish trap, and they were placed there in the hope— and perhaps the bona fide opinion—that it gave some sort of priority. I think, too, that the work done on June 18th must be held to be the beginning of the construction of a new trap, and not simply the repair of an old trap. It was a new doing of a thing forbidden by section 262. It was a distinct violation of the statute. It conferred a distinct cause of action on the plaintiff. If he suffered any injury, it would make no difference that the injury which he suffered is of the same nature as the injury alleged to have been suffered in 1440-A.