GENERAL FISH CO., Inc. v. MARKLEY.

No. A-7765.

District Court, Alaska
Third Division, Anchorage.

July 2, 1952.

Plummer & Arnell, Anchorage, Alaska, Bogle, Bogle & Gates, Frank L. Mechem,

Medley & Haugland, Seattle, Wash., for plaintiff.

McCutcheon & Nesbett, Anchorage, Alaska, for defendant.

DIMOND, District Judge.

Several days ago, by reason of the emergency existing, an oral decision was given in this action holding generally for the defendant and against the plaintiff, including a statement of some of the reasons therefor. The subject is of such consequence that the following more detailed view of the facts and the law should be recorded.

The case involves the location and operation of two fish traps situated in tidal ocean waters on the west shore of Trading Bay, Cook Inlet, Alaska. If the operation of one trap is lawful, that of the other is unlawful. While the conflicting traps are some 60 feet apart, each is described as being located at latitude 61° 00' 35" north, longitude 151° 24' 0" west. Geographically, a degree of latitude on a meridian or of longitude on the equator embraces 60 geographic miles or 69.16 statute miles; a second of distance on a meridian is 1/3600ths of a degree and therefore each second is more than 100 feet distant from the precise point of location of the next second. It may be rightly considered that one second on the meridian embraces the entire distance of 100 and a fraction feet to the point of the next second for descriptive purposes. Both traps therefore may be considered as being situated at latitude 61° 00' 35" north. This view is enforced by the varying figures used to designate the seconds, and, in one instance, even the minutes, of the location in former years. See Plaintiff's Exhibits 2, 2A, 2B, 3 and 4.

This case is so intimately associated with another case brought in this Court, and finally tried in the month of May, 1952, Lind v. Markley, 105 F.Supp. 50, that the opinion in that case, which is dated May 9, 1952, must be read for understanding of the facts and the decision in this case. Therefore, it is necessary to refer to the Lind case.

For several years prior to 1946, Myrtle M. Everett and her predecessors in interest operated a type of fish trap known as a handtrap at the approximate location in the waters of Cook Inlet above mentioned. Mrs. Everett also owned a tract of land on the upland westward of the fish trap location embracing an area of 55.91 acres, U. S. Survey No. 1808, and extending for a distance of more than 1,600 feet along the shores of Cook Inlet, following generally the line of mean high tide. The shoreward end of Mrs. Everett's fish trap location was at a point about 500 feet easterly from the southwest corner of said U. S. Survey No. 1808. The trap extended almost due east from this point upon and over the tidelands of Cook Inlet, covered with water at high tide and entirely bare at low tide. By written instrument dated April 5, 1946, Mrs. Everett transferred her rights to her fish trap location to the plaintiff in this action and by the same instrument also granted to the plaintiff an easement reading as follows:

"5. The said General Fish Co., Inc., is hereby given an easement to anchor the lead of said fish trap to be erected on said site upon the land of the First Party, hereinbefore referred to as U. S. Survey No. 1808, said easement to continue during the fishing season of each year only and for such period of time prior to the beginning and after the end of said fishing season as may be necessary and requisite for the installation or dismantling of said fish trap erected on said fish trap location."

By the same instrument, Mrs. Everett granted to the plaintiff an easement for such space as the plaintiff might designate to be used by the persons operating, installing, dismantling and servicing any trap that might be installed upon the location but that easement is not in question here. Testimony given by a witness for plaintiff indicates that the plaintiff paid Mrs. Everett $20,000 for her fish trap location rights and the easements, and that the market value of the fish taken in the trap each season is approximately $50,000. During

each year thereafter, until and including 1951, the plaintiff herein operated a fish trap of the type mentioned on the approximate, if not the identical, location which had been used by Mrs. Everett.

For some years prior to 1951, the defendant Markley had operated set nets, types of fixed fishing gear, consisting of gill nets attached to stakes or poles driven in the tidelands of Cook Inlet, in the vicinity of the plaintiff's trap and immediately off-shore from the land embraced in U. S. Survey No. 1808. No dispute or difficulty had arisen prior to 1951 between the plaintiff and the defendant concerning the operation of defendant's stake nets. Stake nets and handtraps are both types of fixed fishing gear and are in some respects similar except that by the use of stake nets fish are caught by their gills and in handtraps the fish are led into a trap and there held until the outgoing tide leaves the bottom of the trap dry and then the fish are pitched or thrown into scows previously moored alongside, and so, on flood water, brought to the cannery. The fish caught in set nets, which are also dry at low tide, are taken out by hand when the water recedes.

Prior to 1951, both the plaintiff and defendant operated their respective types of gear in harmony and without dispute. Before 1951, however, the plaintiff had some contention with another gill net operator in the area. In 1951 the season for taking fish by set nets in that area opened at six o'clock in the morning on May 28. At that hour the tide was out and the tidelands were dry. Ordinarily, stake nets are set and put in position for operation at high tide or with an incoming tide, but on May 28, 1951, the plaintiff in this action, acting through the nominal plaintiff, Lind, in the case of Lind v. Markley, who was then and is now an employee of the plaintiff in this action, and had no personal interest in the matter other than as an employee, promptly at six o'clock erected stake nets on the locations occupied before in that identical area for several years by the defendant Markley. Markley, believing there was some defect in the installment of the Lind nets, set his own nets alongside on and with the incoming tide about nine o'clock in the morning of May 28, 1951. Lind, in all respects representing his employer, the plaintiff in this action, General Fish Company, Inc., immediately brought an action in this Court and secured an injunction pendente lite against Markley, the defendant in both cases. The Lind case did not come on for trial until May 1952 and was then decided in favor of Lind. An outline of the facts of the case are to be found in the opinion of this Court, Lind v. Markley, supra.

Accordingly, for the year 1951, Markley was deprived of fishing in the locations which he had previously occupied for a number of years, and his possession of which had been recognized by local custom, and the plaintiff in this action secured the benefit of fishing in that area. The rule announced by the Court in its opinion in Lind v. Markley, supra, was based upon a number of prior decisions of this Court holding that as to fishing in the waters of Alaska, unless the law provides otherwise, the one who is first in time is prior in right. The decision in Lind v. Markley was given shortly before the opening of the fishing season in Cook Inlet for the year 1952.

Having suffered such a severe loss at the hands of the plaintiff, who acted through its agent Lind, in 1951, Markley apparently concluded that his only recourse lay in invoking the same rule of law that was relied upon in the Lind case, and apply it to the plaintiff's handtrap site theretofore operated by the plaintiff in the same general area. Accordingly, having secured some help from other persons, on May 14, 1952, Markley made application for a War Department permit to construct a fish trap at that place and made application also for a Territorial license and proceeded to commence the construction of a handtrap at or very near to the place theretofore occupied by the plaintiff's trap in former years, and the permit and license were eventually issued. Under the circumstances, they could not be lawfully denied. The plaintiff was informed of the Markley operations shortly thereafter and on or about May 17, several days after the Markley

trap had been commenced, proceeded to the waters of Trading Bay, and on May 18, 1952, drove piles for the installation of another trap approximately 60 feet north of the Markley trap. On June 2, 1952, the plaintiff in this action sought and secured a temporary restraining order against Markley, shortly afterward dissolved, and sought but did not secure a preliminary injunction.

In its complaint in this action, in the proceedings for preliminary injunction, the plaintiff did not reveal that the defendant Markley had commenced the construction of a fish trap on May 14, 1952, but asserted that Markley had placed "obstructions" in the way of plaintiff's installation of plaintiff's fish trap and had refused to remove the "obstructions" upon demand. However, such pleading might well give rise at least to a suspicion that the "obstruction" was a fish trap. The application for injunction was denied, and the case, by consent of parties, was set for trial on June 20, 1952.

At the trial the testimony showed that the defendant's trap was very near completion and the plaintiff's trap even nearer to being fully completed. The date of the opening of the season for this type of fishing was six o'clock on the morning of June 26.

As shown above, the written instrument of transfer and sale given by Mrs. Everett to the plaintiff gave the plaintiff the right to establish an anchor for the trap on the upland owned by Mrs. Everett. That upland was not conveyed to plaintiff. The site of this anchor was not designated in the written instrument and it seems apparent that it was the intention of the parties that the anchor could be located at any point selected by plaintiff along the shoreline and on the land. The plaintiff claimed that it had located the site for the anchor and that it was the same site which had been occupied by Mrs. Everett in previous years.

Plaintiff's witnesses also testified that this precise site was the one on which the defendant had placed a sign on May 14, 1952, with the writing thereon "Markley Handtrap No. 1". Accordingly, the plaintiff asserts that Markley's sign was a nuisance and a trespass upon plaintiff's easement. Anchor sites, frequently called "tailholds" simply consist of a post driven or a deadman buried in the earth, to which is attached a wire from the last shoreward pole or pile of the trap and from that wire is suspended a net of some sort, wire or fabric, to keep the salmon from going around the shoreward end of the trap lead. It would be fantastic to suppose that the shifting of the anchor or tailhold by as much as four feet would interfere with the operation of the trap. There is no testimony to indicate that the erection of the sign by the defendant on the Everett land has caused the slightest damage to the plaintiff.

The erection by the defendant Markley of his trap extending outward from the shoreline, but all on the tidelands, no part of which is included in the Everett tract, has undoubtedly interfered with the plaintiff in the construction of its trap some 60 feet distant from the defendant's trap. This interference is principally by reason of the nature of the equipment used by the plaintiff in building his trap.

At the time of the trial, both traps were nearing completion and the only serious question before the Court was as to which had priority over the other because the regulations forbid one trap to be operated within 2,500 feet of another in this particular region.

In the trial of Lind v. Markley, the plaintiff Lind (who was then, as indicated, merely the agent for the plaintiff in this present action) through his counsel, urged that under the circumstances there disclosed, which are not materially different from the circumstances in this case, the one who first occupied in any season the site of a set net after opening of the season was entitled to operate it. No such suggestion came from plaintiff's counsel in the trial of this case and it was forcibly argued by plaintiff's counsel in this case that the plaintiff had prior rights because of his purchase of the site from Mrs. Everett and his operation thereafter during the intervening years. The whole theory of the plaintiff—really the same

plaintiff as Lind v. Markley—was abandoned, and an entirely new theory of law was urged upon the Court by plaintiff's counsel, who had not appeared in Lind v. Markley.

■ While differences in the circumstances in this case as compared with that of Lind v. Markley are urgently presented to the Court, I find that there is no substantial difference or distinction to be made. The placing by the defendant of a sign upon the shore while it may have been a trespass, involved not the slightest damage to the plaintiff. There is no reason in law or equity why the defendant should be penalized because he mistakenly placed a sign upon the Everett land, upon which the plaintiff claims an easement, rather than below the mean high tide line, which would have served his purpose and complied with the law just as well.

The evidence shows that on May 14, 1952, no War Department permit for the construction of the trap under the provisions of law embodied in Title 33 U.S.C.A. § 401, had been actually granted to the defendant and that no Territorial license required by the revenue laws of Alaska for the construction and operation of such trap had been issued by the Territory. The evidence further shows that on May 14, the defendant had made an application for both permit and license and that the delay in their issuance was occasioned only by the usual administrative lag in such matters; that the permit and license were eventually issued, and that defendant was entitled to them on May 14, 1952.

■■ It has been decided by this Court on several occasions that the issuance or possession of such permit and Territorial license have no significance in determining the right to occupy and operate a certain site for a fish trap or to operate the trap itself. Thlinket Packing Company v. Harris & Company, 5 Alaska 471; Harris & Co. v. Thlinket Packing Co., 1916, 5 Alaska 493; Columbia Salmon Company v. Berg, 1916, 5 Alaska 538; Alaska General Fisheries v. Smith, 1927, 7 Alaska 635.

Analogy may be found in the law with respect to mining claims. Section 2319, U.S.R.S., now embraced in Section 47–3–1, A.C.L.A.1949, 30 U.S.C.A. § 22, provides that "all valuable mineral deposits in lands belonging to the United States * * * [are] open to exploration and purchase, and the lands in which they are found to occupation and purchase, by citizens of the United States and those who have declared their intention to become such". Despite this limitation, the Courts have uniformly held that no one except the United States may question the validity of a mining claim located by an alien, McKinley Creek Mining Co. v. Alaska United Mining Co., 1901, 183 U.S. 563, 22 S.Ct. 84, 46 L.Ed. 331; Tornanses v. Melsing, 9 Cir., 1901, 109 F. 710; Shea v. Nilima, 9 Cir., 1904, 133 F. 209, although "a mining claim perfected under the law is property in the highest sense of that term, which may be bought, sold and conveyed, and will pass by descent", Belk v. Meagher, 1881, 104 U.S. 279, 283, 26 L.Ed. 735; Forbes v. Gracey, 1876, 94 U.S. 762, 24 L.Ed. 313; Manuel v. Wulff, 1894, 152 U.S. 505, 14 S.Ct. 651, 38 L.Ed. 532; O'Connell v. Pinnacle Gold Mines Co., 9 Cir., 1905, 140 F. 854, 4 L.R.A.,N.S., 919. See discussion in 2 Lindley on Mines (3rd Ed.) p. 1201, Sec. 539. Under the circumstances here disclosed, the issuance of a War Department permit and Territorial license tax have no bearing whatever on the issue.

The rule of law now adhered to—first in time, prior in right—has been uniformly followed in all similar cases arising in Alaska. It was the basis of the decision at the instance of plaintiff, through his agent, in Lind v. Markley. More elaborate discussion is to be found in the opinion of this Court in Fisher v. Everett, 1945, 66 F.Supp. 540, 11 Alaska 1. The report of that case, pages 21 and 22, embraces a list of the relevant judicial opinions.

■ The Court must here hold to the doctrine so strongly and successfully urged by the plaintiff itself in Lind v. Markley to Markley's economic loss.

The defendant's trap was lawfully constructed and may be operated during the

season of 1952. The plaintiff's trap was not lawfully constructed and may not be operated as long as the defendant's trap is being operated during the 1952 season.