## McKINLEY CREEK MINING CO. *v.* ALASKA UNITED MINING CO.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF ALASKA.

No. 37. Argued April 15, 16, 1901.—Decided January 6, 1902.

There is no prejudicial error in the ruling of the court below on the admission of testimony.

Assignments of error cannot be based upon instructions given or refused in an equity suit.

The locations are valid so far as they depend upon the discovery of gold.

The notices as set forth in the opinion of the court constituted a sufficient location.

Grantees of public land take by purchase.

In *Manuel* v. *Wolff*, 152 U. S. 505, it was decided that a location by an alien was voidable, not void, and was free from attack by any one except the Government.

THIS is a bill in equity brought by the appellee company, who was plaintiff below, to establish title to two placer mining claims, against a like claim of appellant company to the same ground.

The bill alleged that "Peter Hall, William A. Chisholm, James Hanson, John Dalton and Dan. Sutherland, partners under the firm name and style of the Alaska United Mining Company, bring this their bill of complaint against C. G. Lewis, Bert Woodin, Edwin Hackley, Alex. McConaghy, Carl A. West, W. S. Hawes, Chas. P. Leitch, and C. P. Cahoon, partners under the firm name of the McKinley Creek Mining Company, and show to the court that the said parties, both plaintiffs and defendants, are citizens of the United States and residents of the District of Alaska."

The bill also alleged ownership of the claims by reason of location, exploration and discovery of precious metals, and the compliance with the local rules and regulations of the mining district. Also possession of the claims and the erection of val-

uable improvements thereon, and forcible entry upon that possession by defendants (appellants) with an attempt and avowed purpose to drive plaintiffs (appellees) therefrom, and unless restrained they would proceed to the execution of said threats. An injunction was prayed for.

The defendants admitted their citizenship, but denied the citizenship of plaintiffs on the ground that the defendants had not sufficient knowledge to form a belief thereto, and traversed in like manner or absolutely the other allegations of the bill, and alleged title by reason of prior discovery by members of the company. The answer also alleged prior possession by members of the company from which they were dispossessed by the plaintiff, and claimed that as to the controversies thus arising "defendants are under the law and practice of this court entitled to a jury trial for the trial of the title to said claims and each of them, and to that end and purpose have commenced in this honorable court a suit in ejectment for the trial and determination of the title to said property in an action at law and according to the usage and practice of this court, and until the trial and determination of such trial at law by this honorable court the defendants are entitled to a restraining order against said plaintiff company and its individual members restraining them and each of them from the commission of the wrongful acts herein complained of."

A temporary injunction was prayed against plaintiffs (appellees).

There was a reply filed to the new matter of the answer and to the cross complaint.

A jury was impanelled to try the case on motion of plaintiffs, no objection being made by defendants, and after hearing the evidence and receiving instructions from the court the jury rendered a verdict for plaintiffs, as follows: "We, the jury in the above-entitled and numbered cause, find for the plaintiffs, Peter Hall, Wm. A. Chisholm, Dan. Sutherland, James Hanson, and John Dalton, partners under the firm name and style of the Alaska United Mining Co., the claims in controversy."

The defendants in due time moved for judgment, notwithstanding the verdict, upon the ground that on the evidence the

defendants were entitled " to a judgment in their favor for the possession of the mines and property in controversy." The motion was denied.

Subsequently defendants moved for a new trial (1) upon the testimony in the cause, the rulings therein and exceptions taken, and upon the pleadings and proceedings in cause No. 967; (2) the insufficiency of the evidence to justify the verdict; (3) error in refusing to give certain instructions requested by defendants (appellants).

The motion was denied and the following judgment was entered :

" This cause came on to be heard at this term upon the bill, the answer and cross bill of defendants and the replication thereto of plaintiffs and the proofs in the case and upon the request of defendants, duly made by their counsel, Messrs. Winn & Weldon, the issues arising upon said pleadings and proofs were submitted to a jury of good and lawful men, duly selected, impanelled and sworn, to wit, J. Montgomery Davis and eleven others, who, having heard the said proofs adduced in the case and having been instructed by the court as to the law, and having heard the argument of counsel, retired in charge of the bailiff to consider of their verdict and after due deliberation had returned into open court the following verdict, to wit :

\*    \*    \*    \*    \*    \*

" We, the jury in the above-entitled and numbered cause, find for the plaintiffs, Peter Hall, William A. Chisholm, Dan. Sutherland, Jas. Hanson and John Dalton, partners under the firm name and style of the Alaska United Mining Company, the claims in controversy.

(Signed)    " J. MONTGOMERY DAVIS, *Foreman.*

" Which said verdict was by the court received and ordered recorded, and the finding therein contained upon the issues in said cause were by the court approved and adopted.

" Now, therefore, upon consideration of the said bill, the answer thereto and the cross complaint of said defendants, the replication of plaintiffs, and the said proofs, and by reason of the verdict of the jury thereon, approved and adopted by the

court, it is, upon consideration thereof, ordered, adjudged and decreed as follows, to wit:

" That the said defendants, C. G. Lewis, Bert Woodin, Edwin Hackley, Alex. McConaghy, Carl A. West, W. S. Hawes, Charles P. Leitch and C. P. Cahoon, a mining copartnership under the name and style of the McKinley Creek Mining Co., have not nor have any of them, any right, estate, title or interest whatever in or to those two certain mining claims, lands and premises described in the said bill of complaint and in the said answer and cross complaint of defendant and hereinafter more particularly described; that the title of the plaintiff, The Alaska United Mining Company, a corporation composed of Peter Hall, William A. Chisholm, Dan. Sutherland, Jas. Hansen and John Dalton, thereto is good and valid, and that the said defendants and each of them be, and they and each of them are hereby, forever enjoined and restrained from asserting any claim whatsoever in or to said mining claims, lands and premises adverse to said plaintiffs, and that the said plaintiffs be, and they are hereby, quieted in their possession, use and enjoyment of the same."

A description of the claims followed.

Objection was made to the judgment, and the defendants claimed that the only judgment which could be entered was one " restraining the defendants from the acts complained of in the bill of complaint pending the trial of cause No. 967, *The McKinley Creek Mining Co.* v. *The Alaska United Mining Co.*, which is a suit in ejectment now pending in this court and at issue, the record and files of which are hereby referred to and made a part of this objection."

From the judgment entered the case is here on appeal.

*Mr. S. M. Stockslager* for appellants. *Mr. George C. Heard* was on his brief.

*Mr. L. T. Michener* for appellees. *Mr. W. W. Dudley, Mr. J. F. Maloney* and *Mr. J. H. Cobb* were on his brief.

MR. JUSTICE McKENNA, after stating the case, delivered the opinion of the court.

The assignments of error present for review the rulings of

the court upon the admission of testimony, the correctness of the court's instructions to the jury and the sufficiency of the evidence to justify the judgment.

We may dispose of the rulings on the admission of testimony summarily. They are not precisely indicated by counsel in their brief, and to review them with a detail of the evidence would unduly extend this opinion. It is enough to say that we have examined the evidence and considered the rulings, and do not discover any prejudicial error in the latter. Besides, it is questionable if such rulings are reviewable in an appellate court. *Wilson* v. *Riddle,* 123 U. S. 608; *Huse* v. *Washburn* 59 Wis. 414; *Peabody* v. *Kendall,* 145 Ill. 519.

For an understanding and consideration of the other contentions of appellants it is only necessary to indicate the propositions which the evidence of the parties tended to establish. On the part of the plaintiffs (appellees) the evidence tended to show that Dan. Sutherland, James Hanson, William Chisholm and Jack Dalton, who compose the appellee company, and Peter Hall and one Hawes and C. P. Cahoon, were working at Pleasant camp in Alaska for William Chisholm on and prior to October, 1898. Prospecting on the river Porcupine was resolved on to be done by Hanson, Sutherland and Cahoon, and the following power of attorney was given to Cahoon:

"Know all men by these presents that Peter Hall, William Chisholm, William S. Hawes, of Pleasant camp, British Columbia, have made, constituted and appointed, and by these presents do make, constitute and appoint, C. P. Cahoon, of Pleasant camp, British Columbia, our true and lawful attorney, for us and in our names, place and stead to locate a mining claim in the Territory of Alaska.

"In testimony whereof we have hereunto set our hands and seal this 4th day of Oct., A. D. 1898.

        "PETER HALL.   [SEAL.]

        "WM. A. CHISHOLM.   [SEAL.]

        "WM. S. HAWES.   [SEAL.]

"Signed, sealed, and delivered in the presence of—

    "DAN. SUTHERLAND.

    "J. HANSON."

· Provisions were furnished the party, and they started out on the 4th of October, 1898, and met on the creek (subsequently given the name of McKinley) certain members of the appellant company. Gold was discovered, and Cahoon wrote notices of location for Chisholm and Hall upon a snag or stump in the creek, making their claims contiguous, and afterward reported that he had done so, saying that he had staked Chisholm first and Hall next. Chisholm and Hall went to the claims about the 20th of October, and cut trails to them, and did other work upon them; and at that time copied the notices of location and had them recorded. The notices with their endorsements were introduced in evidence.

The testimony was given by several witnesses and in great detail, and it was opposed at about all points by testimony of several witnesses, including Cahoon; and as to who first discovered gold there was a decided conflict whether Sutherland did, who is one of the appellee company, or whether Hackley did, under a location by whom the appellant company claims. Also a conflict as to whether Hackley protested when Cahoon wrote the notices of location for Chisholm and Hall, and whether Cahoon promised to take them down and authorized Hackley to do so, and upon his declining authorized Lewis, one of the appellant company, to take them down and relocate Chisholm and Hall further up the creek, and whether Lewis did so.

1. It will be observed that the main controversy of fact between the parties was as to who made the first discovery of gold—Hackley or Sutherland. On this testimony appellants base three contentions, to which they claim, the instructions asked by them at the trial court were addressed:

(1) That the discovery of mineral is a precedent condition to the making of a valid location, and that Hackley was the first to discover gold.

(2) That the locations relied on by appellees were invalid because they were not "distinctly marked on the ground, or otherwise designated as required by law."

(3) That the citizenship of Chisholm and Hall was put at issue by the pleadings, and no evidence was offered to establish

it, but on the contrary the power of attorney under which Cahoon acted represents them to be citizens of British Columbia.

Without now questioning the soundness of either of these contentions, it is enough to say that the assignments of error based upon the refusal of instructions cannot be entertained. This is undoubtedly a suit in equity, and if it may be regarded as entertained under the general powers conferred by the act of May 17, 1884, 23 Stat. 24, error cannot be predicated upon the giving or the refusing of instructions. The verdict was but advisory to the court, to be adopted or disregarded at the court's discretion. This we regarded as indisputable, but in order that counsel might be heard upon the effect of the Oregon Code, if regarded as applicable to Alaska, we requested briefs of counsel "as to what errors, in respect of giving or refusing instructions or other rulings on trial by a jury in a cause of this character, are open for consideration on appeal from the District Court of Alaska."

In response to that request, counsel for appellant urge that by section 7 of the act of May 17, 1884, *supra*, the final judgments of a District Court of Alaska are reviewable by this court "as in other cases," and that the terms, other cases, "necessarily refer to the procedure for review provided by sections 691 and 692, Revised Statutes, governing District and Circuit Courts having like jurisdiction." But the procedure there prescribed is for the purpose of reviewing error, and error, as we have already said, cannot be based on instructions given or refused in an equity case. Nor is the rule different in the State of Oregon. *De Lashmutt* v. *Everson*, 7 Oregon, 212; *Swegle* v. *Wells*, 7 Oregon, 222.

2. There was no finding of facts by the court, and, assuming that we may look into the evidence, we find it conflicting as to who first discovered gold, Hackley or Sutherland. The court below evidently determined that Sutherland did, and, having no test of the credibility of the witnesses, we cannot pronounce that determination unsound. Sutherland seems to have been acting with and coöperating with Cahoon. At any rate, Sutherland is not contesting the locations made by Cahoon

for Chisholm and Hall, but on the contrary asserts their validity and claims title under them. The locations, therefore, are valid so far as they depend upon the discovery of gold.

The second contention is that they are invalid because they were not "distinctly marked on the ground." The appellants base this contention on Cahoon's testimony. His testimony is that he wrote the notices of locations upon a stump or snag in the creek, and they were as follows: "I, the undersigned, claim 1500 feet running down this creek and 300 feet on each side."

But the notices produced by other witnesses, and which were testified to be copies, as near as could be made out, of those o. the stump, were respectively as follows:

"Notice is hereby given that I, the undersigned, have this 6th day of October, 1898, located a placer mining claim 1500 feet running with the creek and 300 feet on each side from center of creek known as McKinley Creek, in Porcupine mining district, running into Porcupine River. This claim is the east extension of W. A. Chisholm claim on about 1800 feet from the first falls above the Porcupine River, in the district of Alaska.

"PETER HALL, *Locator.*
"Witness: J. HANSON.
"D. SUTHERLAND.

"Notice is hereby given that I, the undersigned, have, this sixth day of Oct. 1898, located a placer mining claim 1500 ft. along creek bottom and 300 ft. from center of creek each way on creek known as McKinley, in Porcupine mining district, described as follows: West extension of Peter Hall's claim and about 300 feet above first falls on said creek, in the district of Alaska.

"WM. A. CHISHOLM, *Locator.*
"Witnesses: D. SUTHERLAND.
"JAMES HANSON."

These notices constituted a sufficient location; the creek was identified and between it and the stump there was a definite relation which, combined with the measurements, enabled the boundaries of the claim to be readily traced. *Hawes* v. *Victoria Copper Mining Company*, 160 U. S. 303.

3. Conceding, appellants say, a proper discovery and a proper description of the location, nevertheless as the citizenship of the locators was put in issue, it was necessary to be proved to justify a judgment for the appellees because under section 2319, Rev. Stat.; the public lands of the United States are only open to exploration, occupation and purchase by citizens of the United States, and those who have declared their intention to become such.

In *Manuel* v. *Wulff*, 152 U. S. 505, this court sustained the validity of a conveyance of a mining location to an alien, reversing a decision of the Supreme Court of Montana to the contrary. The decision was based upon the difference between a title by purchase and title by descent, and the doctrine expressed that an alien can take title by purchase and can only be divested of it by office found. The case of *Governeur* v. *Robertson*, 11 Wheat. 332, was cited and approved, and the remarks of Mr. Justice Johnson in that case become apposite:

"That an alien can take by deed, and can hold until office found, must now be regarded as a positive rule of law, so well established that the reason of the rule is little more than a subject for the antiquary. It no doubt owes its present authority, if not its origin, to a regard to the peace of society and a desire to protect the individual from arbitrary aggression. Hence it is usually said, that it has regard to the solemnity of the livery of seisin, which ought not to be divested without some corresponding solemnity. But there is one reason assigned by a very judicious compiler, which, from its good sense and applicability to the nature of our government, makes it proper to introduce it here. I copy it from Bacon, not having had leisure to examine the authority which he cites for it: 'Every person,' says he, 'is supposed a natural born subject that is a resident in the kingdom and that owes a local allegiance to the king, till the contrary be found by office.' This reason, it will be perceived, applies with double force to the resident who has acquired of the sovereign himself, whether by purchase or by favor, a grant of freehold."

That grantees of the public land take by purchase this court, in *Manuel* v. *Wulff*, left no doubt. It was said that when a

location is perfected it has the effect of a grant by the United States of the right of present and exclusive possession. *Forbes* v. *Grady*, 94 U. S. 762; *Belk* v. *Meagher*, 104 U. S. 279; *Gwillim* v. *Donnellan*, 115 U. S. 45; *Noyes* v. *Mantel*, 127 U. S. 348.

The appellants, however, deny the application of *Manuel* v. *Wulff*, and contend that this suit having been brought under section 500 of the Oregon Code, in order to maintain the suit the appellees must show a right to the exclusive possession of the ground in dispute. This is in effect to say that while the validity of the location may not be disputed by appellants, the right to the possession, which is but an incident of the location, may be. We do not concur in this view. The meaning of *Manuel* v. *Wulff*, is that the location by an alien and all the rights following from such location are voidable, not void, and are free from attack by any one except the government.

It is not necessary to notice other points made by appellants and, discovering no error in the record,

*Judgment is affirmed.*