### VEDIN v. McCONNELL.

Circuit Court of Appeals, Ninth Circuit.
November 28, 1927.

No. 4713.

1. **Witnesses** ⊜345(4)—**That witness, convicted of felony, was pardoned, does not lessen right to show conviction to affect his credibility.**

On cross-examination of a witness, opposing counsel has the right to ask him if he has not been convicted of a felony, and this right is not affected by the fact that he may have received a full pardon.

2. **Mines and minerals** ⊜11—**Location of mining claim in Alaska held not void because locator was on parole from federal penitentiary (30 USCA § 22; Pen. Code Alaska, § 196).**

Under Rev. St. § 2319 (30 USCA § 22), authorizing any citizen, or person who has declared his intention, to acquire mining claims, that the locator of a claim was at the time on parole from a federal penitentiary and under

Pen. Code Alaska, § 196 (30 Stat. 1283), his civil rights were suspended, *held* not to render the location void, and on expiration of his term, or restoration of his civil rights by pardon, his right to the claim, no other rights intervening, *held* to become effective and to relate back to date of location.

**3. Mines and minerals ⊗⟹21(1)—Certificate of location of mining claim held insufficient as to description (Laws Alaska 1915, c. 10, § 2).**

Certificate of location of mining claim *held* insufficient in respect to description to comply with Laws Alaska 1915, c. 10, § 2.

In Error to the District Court of the United States for the Fourth Division of the Territory of Alaska; Cecil H. Clegg, Judge.

Action at law by G. A. Vedin against O. A. McConnell. Judgment for defendant, and plaintiff brings error. Reversed, with directions.

Herman Weinberger, of San Francisco, Cal., and Louis K. Pratt, of Fairbanks, Alaska, for plaintiff in error.

Charles W. Slack and Edgar T. Zook, both of San Francisco, Cal., and John A. Clark, of Fairbanks, Alaska, for defendant in error.

Before HUNT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. This is an action in ejectment, brought to determine the right of possession to certain mining ground for which defendant had filed patent application. From a judgment on the verdict in favor of defendant, plaintiff brings error.

The mining ground in controversy is in the Fairbanks recording district, Alaska, and was in possession of a third party under a prior location up to 12 o'clock midnight July 1, 1921, at which time, because of his failure to do the requisite assessment work, the owner's right expired. At the trial most of the testimony related to the question whether or not defendant's acts of relocation, upon which his claim is now predicated, were performed very early in the morning of July 1st, or of July 2d. The testimony on that issue was highly conflicting, and for present purposes we assume, in harmony with defendant's contention, that the latter is the correct date. Plaintiff performed the acts of location upon which he relies on July 9, 1921. Thereafter, in December, 1923, defendant caused a survey to be made, and upon the same day filed in the local land office his application for patent. In due time, on October 10, 1924, plaintiff filed in the land office his protest and adverse claim, and within 60 days thereafter, namely, on November 14, 1924, he commenced this action in support thereof.

[1] We are at this time concerned chiefly with two questions—the sufficiency of defendant's recorded certificate of location, and the personal capacity of plaintiff to make a valid location. Because of its bearing upon the latter's right to challenge the judgment awarding possession to defendant, the second question is first to be considered. In the court below it arose in this manner: The averment of his citizenship having been formally denied in the answer, plaintiff produced at the trial a certificate of his naturalization, whereupon it was stipulated in open court that he was naturalized in California on July 6, 1896. Thereafter, on cross-examination, the question was put to him whether at the time of his location he was under parole from McNeills Island prison, to which place he had been sent by the court below upon a felony charge. His counsel objected, and after some controversy whether it was intended to challenge his competency to make a mining location, or only to affect his credibility as a witness, counsel for defendant temporarily withdrew the question and asked him whether he had been convicted of a felony.

Counsel for plaintiff interposed objection, the grounds of which are not clearly presented; but, upon his representation that in support thereof he desired to offer some proofs out of the presence of the jury, the court directed the jury to retire. Whereupon plaintiff produced a pardon, dated April 1, 1924, which, after reciting that in an Alaska court plaintiff had on May 17, 1918, been adjudged guilty of perjury on three counts and sentenced to prison for a year and a day on each count, the sentences to be served consecutively; that his imprisonment had commenced on January 25, 1920; that he had been released on parole March 22, 1921, and finally discharged from custody May 20, 1922; and that he had conducted himself in an exemplary manner thereafter, granted him "a full and unconditional pardon, for the purpose of restoring his civil rights." Thereupon, after argument and the return of the jury, plaintiff's objection to the question was sustained. While not presently important, this we think was error. The pardon in no wise negatived the implications of the conviction in respect of plaintiff's character, and the jury was entitled to knowledge of it as bearing on his credibility as a witness.

Thereupon counsel for defendant sought by divers questions to show that at the time of his location, plaintiff was disqualified by reason of the judgment and parole referred to in the pardon, but all of plaintiff's objections were sustained, with the result that no evidence went to the jury upon those subjects. The only issue raised by the pleadings was that of plaintiff's citizenship, and the conviction did not vacate the decree of naturalization or destroy the status established thereby, though it may have operated to suspend the exercise of certain rights otherwise incident to citizenship. While, therefore, we might dispose of the matter as thus presented upon the ground alone that the inquiry was not within the issues made by the pleadings, inasmuch as in future proceedings the question may again arise, we deem it proper to discuss it upon its merits.

Assuming the facts to be as implied in defendant's questions and recited in the pardon, the precise question is whether the plaintiff, a subsequent locator, has the requisite footing to challenge in an adverse proceeding the validity of a prior location. For the purposes of the inquiry, we must further assume that defendant's attempted location was void, and that, therefore, the ground was subject to location by any qualified person on July 9th, and that, if he was a competent locator, plaintiff's acts were sufficient to constitute a valid location.

[2] Under the mining laws of the United States, valuable mineral deposits in public lands, and such lands, are open to exploration, occupation, and purchase "by citizens of the United States and those who have declared their intention to become such." Section 2319, R. S., U. S. (30 USCA § 22). In terms, at least, no other qualification is required, and it has been held that, notwithstanding his legal incompetency for many purposes, a minor, being a citizen, may make a valid location. Thompson v. Spray, 72 Cal. 528, 14 P. 182. See, also, Lindley on Mines (3d Ed.) § 225. In Congress alone is vested the power to prescribe such qualifications and neither a state nor a territory may add thereto.

Defendant's position is that, in so far, at least, as concerns Alaska, such further restriction is to be found in section 196 of the Penal Code of that territory, adopted by Congress March 3, 1899 (30 Stat. 1253, 1283), which is as follows: "That a judgment of imprisonment in the penitentiary for any term less than life suspends all civil rights of the person so sentenced, and forfeits all public offices and all private trusts, authority or power, during the time or duration of such imprisonment." The correct interpretation of this provision, in the light of its origin, the reasons underlying the kindred rule of the common law, and the prevailing principles of modern criminal jurisprudence as established by statutory enactments and declared in judicial decisions, would be an interesting subject, but we refrain from fully discussing it, because of other considerations deemed to be controlling. It may be observed, however, that if the section is to be given the effect claimed for it, and there is no broader ground upon which to predicate the contention of plaintiff's incompetency, it would seem to result that, because of a statute of local application only, conviction of a felony in an Alaskan court operates in effect to create an exception to the general language of section 2319, supra, whereas a like conviction in another jurisdiction would have no such effect. But, however that may be, as already noted, at the time he made his location, plaintiff was at large under a parole granted him pursuant to the provisions of the General Parole Act of June 25, 1910 (36 Stat. 819 [18 USCA §§ 714–723]). This act authorizes the parole board, at its discretion, to release a prisoner who has served at least one-third of a sentence exceeding the term of one year, if in the judgment of the board there is reasonable probability that he will "live and remain at liberty without violating the laws" and "such release is not incompatible with the welfare of society."

Such release, however, does not operate to terminate the sentence or completely to discharge the prisoner from restraint, for under the terms of the act, while on parole, he is to live and stay within such territory as the board may prescribe and is deemed to be "in the legal custody" of the prison warden. Anderson v. Corall, 263 U. S. 193, 44 S. Ct. 43, 68 L. Ed. 247; Id. (C. C. A.) 279 F. 822. But, though such restrictions upon the prisoner's liberty, in legal effect, constitute a continuation of his punishment in an ameliorated form, it is to be supposed that one of the underlying purposes of the parole policy is to encourage one convicted of a crime to adopt a right attitude toward society and to aid him in an endeavor to reinstate himself therein. The act expressly provides that a parole officer to be appointed by the board shall aid paroled prisoners in securing employment, presumably any honorable employment for which they have ex-

perience, aptitude, or desire. That it must be taken as in some measure qualifying the rule of civiliter mortuus, we have no doubt. Byers v. Sun Savings Bank, 41 Okl. 728, 139 P. 948, 52 L. R. A. (N. S.) 320, Ann. Cas. 1916D, 222. The full 'extent of such qualification it is unnecessary here to decide.

When plaintiff went upon the ground in controversy he was in the exercise of the liberty conferred by his parole, and in exploring the ground, discovering mineral, marking the boundaries of his claim, and posting and filing his notices, he was violating no law, even if it be conceded that such acts did not have the efficacy to vest in him a right. The Alaska statute, supra, purports only to *suspend* the civil rights of a convict "during the time or duration" of the imprisonment. So that, even though such duration be held to have continued after the plaintiff was granted a parole, it terminated on May 20, 1922, at which time defendant had acquired no rights in the ground in dispute, other than such, if any, as flowed from his location of July, 1921. Our conclusion, therefore, is that, even though it be held that plaintiff was not competent, during the term of his sentence, to take such a grant as is implied by the valid location of a mining claim, upon the expiration of such term, no other rights intervening, the grant became effective and related back to the date of the location. We think the principles recognized in Shea v. Nilima (C. C. A.) 133 F. 209, and McKinley v. Alaska M. Co., 183 U. S. 563, 22 S. Ct. 84, 46 L. Ed. 331, are clearly applicable.

[3] We pass to a consideration of the question of the sufficiency of defendant's certificate of location. Prescribing the requisite acts to be performed by the locator of a mining claim, the Alaska statutes (Session Laws of Alaska 1915, c. 10) provide in section 1 for a location notice to be posted or written upon the "initial" post or monument marking the boundary of the claim, and in section 2 as follows:

"Within ninety days after the discovery and posting of the notice aforesaid, the locator shall record with the recorder of the district wherein such claim is situated, a certificate of location. Such certificate shall contain:

"(a) The name or number of the claim.

"(b) The name of the locator or locators.

"(c) The date of discovery and of posting of the location notice.

"(d) The number of feet in length and width of claim.

"(e) It shall set forth the description with reference to some natural object, permanent monument, or well-known mining claim, together with a description of the boundaries thereof so far as applied to the numbering of stakes or monuments.

"A failure to record a certificate of location of claim as herein provided shall operate as and be deemed abandonment thereof, and the ground so located shall be open to relocation: Provided, that if a full compliance with the preceding provisions of this act shall have been made before any location by another, such compliance shall operate to prevent the abandonment or forfeiture of such claim and save the rights of the original locator."

Defendant's certificate of location is as follows:

"Chatanika, Alaska, July 1, 1921.

"I have this day relocated the twenty acres of placer ground know in original records as the Anderson claim. Bounded on the west by the McFarlane fraction, on the south by the diamond fraction and McKnutt, on east by Serpentine, on north by the Duncan and 17 Creek.

"The ground runs 1,320 feet up and down Latanika and across Cleary creek about three hundred on west end. Ground lies in the Fairbanks mining and recording precinct.

"Claim 16 below Cleary.

"Oliver A. McConnell.

"Witness: Morris O'Leary.

"Filed for record July 16, 1921, at 15 min. past 11 a. m.

"Reed W. Heilig, Recorder."

For reasons which have often been explained, the courts treat with great indulgence inaccuracies and uncertainties in initial notices and markings prescribed for mining locations. But the same considerations do not apply to the recorded certificate of location, where, as here, a liberal length of time is given in which to make such record; and to uphold defendant's certificate, in the light of all the facts, would be to set at naught the substantial requirements of the law. Without deciding that each of the defects would, in itself, be fatal, it is to be noted that the certificate fails to disclose the width of the claim, to give a description by reference to numbered stakes or monuments (Purdum v. Laddin, 23 Mont. 387, 59 Pac. 153), to state the date of discovery or posting of location notice, or to tie the claim to any permanent monument or natural object, except by the vague and wholly inadequate

reference to "Cleary creek" and "Latanika." Upon seeking to give reasonable certainty to the description by resorting to evidence aliunde, we find the utmost confusion.

As will be noted, the certificate declares the claim to be a relocation of "the 20 acres of placer ground known in the original records as the "Anderson claim"; but what Anderson claim, or when located or recorded, or at what place in any specific record such claim is "known," is not stated. There is meager evidence to the effect that about 1904 one John Anderson had a claim there; but it further appears that thereafter, from 1908 to about 1915, the ground, in whole or in part, was in the possession of one Linn or Lind. What other locations may have been made upon it, or parts of it, or who was in possession immediately prior to July, 1921, is not stated. Moreover, in his answer defendant makes no reference at all to any "Anderson claim," but alleges that he "relocated, in the manner prescribed by law, said placer mining ground that had so lapsed and that had formerly been known as the Linn claim." Under these circumstances, there is no place for the presumption sometimes indulged by the courts in respect to references in location notices to existing mining claims. The natural inference is that in drawing the answer the pleader found cogent reasons for abandoning the descriptive reference in the certificate and substituting therefor the reference to the Linn claim.

Furthermore, as will be observed in the certificate, defendant describes the claim as being 1,350 feet long, with no notation of its width, or shape, or of the length of any boundary line. Because the area is stated to be 20 acres, it is contended that we should presume the width to be 650 feet; but that would be to presume a symmetrical tract, whereas in the patent application the claim is described as having side lines 1,181 feet and 1,518 feet in length, and end lines 646 and 689 feet in length. It is further stated in the certificate that in its western course the claim extends 300 feet across Cleary creek, whereas upon the patent surveys the southeast corner is shown to be east of Cleary creek. The side lines as surveyed for patent run almost due northeast and southwest, instead of east and west, as stated in the certificate. It is further found that the attempted description by reference to McFarlane, McKnutt, Serpentine, and Duncan claims is not substantially or approximately correct. The utmost contention now made by the defendant, and that involves a heavy strain upon some of the evidence, is that half of the references to other claims are correct.

The judgment is reversed, with directions to grant a new trial and to take further proceedings not inconsistent herewith.