**S. H. P. VEVELSTAD, William L. Pape, and Aurora Nickel Company, a corporation, Appellants,**

v.

**E. Miles FLYNN, Appellee.**

**No. 14431.**

United States Court of Appeals Ninth Circuit.

Jan. 13, 1956.

Rehearing Denied March 5, 1956.

R. E. Robertson, Robertson, Monagle & Eastaugh, Juneau, Alaska, for appellants.

Faulkner, Banfield & Boochever, Norman C. Banfield, H. L. Faulkner, Juneau, Alaska, George F. Ward, John F. Dore, Seattle, Wash., for appellees.

Before HEALY, POPE and FEE, Circuit Judges.

POPE, Circuit Judge.

The appellee, as plaintiff in the court below, had judgment against the appellants-defendants quieting title to 45 unpatented lode mining claims located on Yakobi Island in the southwest part of Alaska about 130 miles by water west of Juneau. Upon sufficient evidence the court found that the plaintiff made valid discoveries[1] and had properly located

1. The findings are in the opinion of the court which is reported at 119 F.Supp. 93. The evidence shows that plaintiff, a graduate mining engineer, after studying United States geological survey bulletins and Bureau of Mines bulletins containing a rather elaborate description and maps of nickel deposits in what is referred to as Bohemia Basin and vicinity on this Island, went to the Island in October, 1952, for the purpose of making locations upon these deposits. With the aid of one Norppa, also a mining engineer, he proceeded to stake out and locate these mining locations. He used as a guide in making the locations the maps contained in Geological Survey Bulletin 931F and particularly one map therein, photostatic copy of which became an exhibit in the case. The trial court also took judicial notice of the contents of the bulletin. As these maps show, and the witnesses testified, the locations were in large part marked by massive out-crops of norite, an igneous rock containing sulphate mineralization bearing nickel and copper.

As these deposits upon which the locations were made were of rock in place, and since the defendants were asserting that they themselves had made discoveries in substantially the same area, the finding of the required discovery is hardly susceptible to question. The geological survey bulletin referred to disclosed that its findings were based upon extensive testing, prospecting and geological studies of these deposits. The bulletin

these claims in accordance with the provisions of the federal and territorial statutes.

■ While appellant challenges the sufficiency of the evidence that appellee Flynn staked and located his claims upon the ground and marked the boundaries as required by the Act of Congress [2] and the territorial statute,[3] in our judgment the testimony given on behalf of plaintiff abundantly supports the finding that the requisite posts and other monuments marking the corners, discoveries and center points were erected and located upon each claim, and that in each case the boundaries were blazed or otherwise marked so that they could be readily traced; further, that in each instance the requisite location notice was posted in compliance with the territorial statute.

The main question which confronted the trial court was whether at the time of the making of plaintiff's locations the ground was then open to location. The record shows without controversy that as appears from the geological survey bulletin referred to in footnote 1, the mineral deposits upon which these claims were located had been known for a good many years. The bulletin credits their discovery in 1921 to S. H. P. Vevelstad, one of the defendants and an appellant here. Vevelstad testified that he had located this ground in 1920 and 1921 but that the assessment work had not been done and the ground had reverted to the Government.

The last of the series of Acts of Congress which suspended the annual labor requirement upon mining claims was that of June 17, 1949, Laws of 81st Cong., 1st Sess., Ch. 221, Public Law 107, 30 U.S.C.A. § 28a note. It suspended the requirement until July 1, 1949. The labor and improvements for the same

period had been suspended for Alaska by the Act of June 22, 1948, Ch. 595, 62 Stat. 571, 30 U.S.C.A. § 28a note. The performance of the annual labor requirement for the year commencing July 1, 1949, and concluding July 1, 1950, was extended until the hour of 12 o'clock noon on the first day of October, 1950, by the Act of June 29, 1950, Laws of 81st Cong., 2nd Sess., Ch. 404, Pub.Law 582, 30 U.S.C.A. § 28a note. However, it was not suspended, and as was conceded by all parties before us, the ground here in question first became open to location at noon, October 1, 1950.

Flynn made his locations in the months of October and November, 1952. When he and Norppa were looking over the ground and making the locations, they found no evidence whatever of any other claims having been located in that area. Flynn testified that there was neither blaze nor post nor notice to be found. Norppa testified that he found one or two tin cans that were quite rusted, indicating that they had been there many years. He found one notice in one tin that was weathered so badly that it was illegible. He saw some blazes which he estimated were 15 or 20 years old but they were not in line nor did they indicate any pattern. He found no evidence of any prior mineral location of any kind which indicated it had been placed there within a period of less than five years. During the winter following, however, Flynn became aware that some location notices or certificates had been recorded by and in the name of the defendant Pape in October, 1950, and some additional location certificates for other claims had been executed on behalf of the defendant Aurora Nickel Company by Pape and recorded in July, 1952. These appeared to have some reference to Bohemia Basin and to Yakobi Island for

itself would furnish additional evidence of discovery under the principle of Lange v. Robinson, 9 Cir., 148 F. 799, 803, which held that the situation of a claim with reference to lands known to contain valuable deposits may have a bearing upon the question of discovery.

(Although these government publica-

tions were an important part of the record before the trial court, the failure of either party to furnish copies added considerably to this court's difficulty in obtaining a complete record.)

2. R.S. § 2324, Title 30 U.S.C.A. § 28.

3. Alaska Compiled Laws 1949, § 47-3-31.

they referred to the mouth of Bohemia Creek. Those recorded in October, 1950 described locations purportedly made on the first day of October, 1950. The certificates recorded in July, 1952, described locations purportedly made on July 1, 1952. For the purpose of ascertaining whether such locations had in fact been made in the area located by him, plaintiff in the spring of 1953, after the snow had melted sufficiently, caused an investigation to be made upon the ground by witnesses whom he employed for that purpose. One of these witnesses, an experienced mineral surveyor, went over the ground in question in May and June, 1953. While there he came upon Pape with another person, who was carrying an axe. Afterwards he heard chopping; he followed the sounds and tracks of Pape and his companion and came to freshly cut and squared trees marked as monuments of the locations claimed by the defendants. There was snow on the ground and the fresh chips lay on the snow and in the fresh tracks. The witness went over the entire area here involved, readily found all of the posts and other markings for Flynn's locations and found a few monuments marked with names applied to the claims assertedly located by the defendants. By survey he located all of the monuments thus found relating to defendants' claims upon a map which was placed in evidence. He testified that these were all freshly made and from their appearance must have been made and marked in that year,— 1953, and could not have been made between 1950 and 1952.

As defendants purportedly relocated 20 of their claims on various days in June, 1953, filing amended location certificates July 6, 1953, it seems clear that the trial judge must have believed from this testimony that the only visible marking of the boundaries by defendants was made by them in June, 1953 at the time this surveyor found Pape and his companion on the Island.

The mineral surveyor's testimony was corroborated by that of a graduate forester, formerly an employee of the Forest Service, who had had experience in calculating the age of blazes or other marks on trees through examination of the growth rings on them and the formation of callus at the point of the blaze. He also examined the marks found on live trees and used as corners of defendants' claims. Referring to these blazes his testimony was that they must all have been made in the spring of 1953 as they disclosed that there had been but one season's growth since the blazes had been made. The witness made his examination in November, 1953.

■ The court found that the locations claimed to have been made by Pape in 1950 and 1952 "were not sufficiently marked on the ground". The court stated: "Viewed with the utmost liberality the testimony is insufficient to show that the claims were so distinctly marked as to enable a third person to trace the boundaries by means of cairns or posts erected on the claims above timber line, or by posts, blazes or other marks on claims below timber line. * * *" This finding, in our opinion, has abundant support in the record.[4]

4. According to the recorded location certificates, the greater number of locations supposedly made by Pape in October, 1950 were made on October 1, 1950. As hereafter noted, Pape did not testify at the trial and his recorded certificates do not disclose whether the locations were made before or after noon on October 1, 1950. That the trial court was abundantly justified in its skepticism about the claimed locations by the defendants is suggested by the record of the testimony of one Hildre who was employed by Vevelstad to take the latter to Bohemia Creek on Yakobi Island on September 29, 1950. The boat reached its destination at 6 o'clock on the morning of September 30; Vevelstad went ashore and at 9 o'clock came aboard with Pape, whereupon the boat shoved off to a place called "Sea Level" across the Straits. Pape remained with the boat until the return to Bohemia Basin after dark on September 30. On the morning of October 1, 1950, about 9 or 10 o'clock, the boat with Pape

■ Indeed the evidence would sustain a belief by the trial judge that the asserted locations by Pape in 1950 and 1952 were purely imaginary. When in the spring of 1953 Flynn went to the area in question to check the possible conflicts suggested by the 1950 and 1952 recordings of defendants' location certificates, he took with him a surveyor from the State of Washington, who was also a Government mineral surveyor, and they were met at the Island on May 14 by Pape. Pape offered to aid them in pointing out the location of his claims but succeeded in demonstrating to the satisfaction of this witness that he was unable to find any of his locations and also that he did not know enough about mining locations to be able to stake or locate one. At any rate this finding of the court sufficiently shows that the ground was vacant at the time of the making of Flynn's locations.

■ Appellants' supposedly prior locations were also void for another reason. While § 28, Title 30 U.S.C.A., merely provides that if records of mining claims are recorded they shall contain "such a description of the claim or claims located by reference to some natural object or permanent monument as will identify the claim", yet § 47–3–33, Alaska Compiled Laws, 1949, makes such a recording within 90 days after the date of posting the notice of location mandatory with respect to mining locations in Alaska. Subdivision (e) of that section provides that there shall be contained in the recorded location certificate: "A description of the claim with such reference to some natural object or permanent monument that an intelligent person, with a knowledge of the prominent natural objects and permanent monuments in the vicinity, could identify the claim." The section provides that failure to file the certificate of location as required constitutes an abandonment of the claim and "the ground shall be open to location." The trial court states in its opinion above cited the reasons why it found

that the descriptions in the location certificates for all but three of the defendants' claims were insufficient to satisfy this provision of the statute. A reference to the maps in the record and in the bulletins of which the court took judicial notice is sufficient to disclose that if the courses given in the location certificates were projected in the direction of the lines stated, then as the trial court said: "The lines would not intersect anywhere near the claims".

Defendants produced as one of their witnesses a consulting mining engineer who prepared a map showing the location of the defendants' claims in relation to those of the plaintiff's. He had done so after an examination of the ground in question. He testified on cross-examination that in making up his map he located defendants' claims from information given him by Vevelstad. He said that from the information given in the location certificates of the defendants it would be "pretty difficult" to find any of these claims; that the bearings were "not very precise"; the distances given were "rather vague", and that it would be possible to plat those claims only with outside information obtained from sources other than the location certificates and that the data given on the location certificates were not sufficient to identify the claims.

The trial court's determination that the appellant's location certificates were insufficient and hence under § 47–3–33 the ground was open to location at the time the Flynn claims were located is in line with this court's decisions in Vedin v. McConnell, 9 Cir., 22 F.2d 753, and in J. E. Riley Investment Co. v. Sakow, 9 Cir., 98 F.2d 8. In the first of those cases, Judge Dietrich, speaking for the court and applying an Alaska statute not distinguishable from the present one, said, 22 F.2d at page 756: "For reasons which have often been explained, the courts treat with great indulgence inaccuracies and uncertainties in initial notices and markings prescribed for min-

aboard left Yakobi and returned to Juneau by way of Sea Level and Pelican,

reaching Juneau early in the morning of October 2.

ing locations. But the same considerations do not apply to the recorded certificate of location, where, as here, a liberal length of time is given in which to make such record; and to uphold defendant's certificate, in the light of all the facts, would be to set at naught the substantial requirements of the law."

The attempted reference to the permanent monument or natural object which this court found wholly inadequate in that case was no more indefinite than the one now before us. The same thing may be said of the location certificate which was held insufficient in J. E. Riley Investment Co. v. Sakow, supra. In the latter case we pointed out the distinction between the facts there and in the case of Smith v. Cascaden, 9 Cir., 148 F. 792, 794, where the certificate had been found sufficient "in the absence of evidence" showing that the references to the natural objects and permanent monuments were inadequate. Here the trial court had before it not only the testimony above referred to disclosing the inadequacy of the references, but it took judicial notice of the maps of the geological survey. Examination of those shows that some of the lines sought to be projected by the appellants' location certificates would not even strike Yakobi Island much less the appellants' claims.

■ Referring to the appellee's claims and the locations thereof which, as we have noted, the court held were sustained by valid discoveries and by sufficient posted notices and markings of the boundaries upon the ground, it is the contention of the appellants that the recorded location certificates of Flynn were themselves insufficient for failure properly to identify the claims by a reference to natural objects or permanent monuments. With respect to this claim the trial court said that "The descriptions given in the location certificates of the plaintiff are such as to make it doubtful whether they are sufficient." But the court further said, "irrespective of these defects, however, the question of the sufficiency of the descriptions is really not involved in this controversy be-

cause such an objection is available only to a subsequent locator." This position of the trial court finds support in the statute, § 47-3-33, above referred to which contains the proviso: "That full compliance with the provisions of this Section, after the ninety (90) day period has elapsed but before the ground has been located by another, shall operate to renew the location and save the rights of the original locator." While, as the trial court suggested, a defect in plaintiff's location certificate would make the ground open to subsequent location, defendants are not in the position of subsequent locators.

■ We would go farther than the trial court and would draw the conclusion that the location certificates of plaintiffs were sufficient to satisfy the requirements of the territorial and federal statutes. Some of the recorded location certificates are so manifestly adequate in this respect that we are satisfied that the trial court could not have expressed any doubt with respect to them. Thus Pelican No. 30 Mining Claim is described as located 50 feet east of the mouth of Bohemia Creek and a reference to the map shows this to be correct. A similar description is made with respect to Pelican No. 28, which was located 400 feet west of the mouth of Bohemia Creek. However, the greater portion of plaintiff's claims were described in the location certificates with reference to the "Bohemia Basin Camp". The court found after hearing testimony that this referred to a certain cabin. It also found that the only other monument given in each instance was an adjoining claim or claims and found that there was not sufficient evidence that the adjoining claims were well known.

We are of the view that the statute does not require reference to more than one natural object or permanent monument and we think that the court's finding that the reference to Bohemia Basin Camp referred to the cabin required a conclusion that the statute relating to location certificates was complied with by Flynn.

■ The appellants' primary contentions on this appeal relate to alleged abuse of the trial court's discretion in denying them a continuance and requiring them to go to trial notwithstanding the absence of the defendant Pape; in not granting them an opportunity to produce Pape as a witness after the trial and before decision rendered; and in holding that Pape's deposition which had been taken before the trial by the appellee was inadmissible in evidence.

The record shows that on October 2, 1953, on motion of the appellee, the case was set for trial immediately following another case which had been set for trial on December 14 following. Counsel for all the appellants was in court at that time. Later his affidavit was filed in support of the motion for a continuance hereafter referred to. It shows that on October 2 he informed the court that Pape might be absent from the country and on board ship on December 14. According to the affidavit he was informed by the court that if that situation arose showing could be made at a later date in support of an application for postponement. Following October 2 and until November 22, Pape was at Seattle, Washington. Although there is a singular absence of showing with respect to the matter, the court below had the right to assume that counsel had notified Pape of the date fixed for the trial. On November 30, 1953, appellants moved for a continuance or postponement of the case on the ground that on November 26, 1953 Pape had sailed with a ship upon which he was employed as an electrician and that he would not be able to return to the United States until some time in February, 1954. While the affidavit in support of the motion asserted that Pape had made the locations of the defendant's claims in 1950 and in 1952, there was no statement in detail as to what Pape would testify if he were present; there was no showing of diligence in securing his presence by subpoena on behalf of the other defendants or in the taking of his deposition. Plaintiff resisted the motion and made a showing of substantial costs incurred in the procuring of witnesses which were then available and ready to testify. The court, remarking that Pape was a party, not a mere witness, and being of the opinion that he had wilfully absented himself and that the other defendants had made no showing of diligence, nevertheless offered to grant a postponement and continuance on condition they would pay the plaintiff the accrued costs incurred in procuring the presence of witnesses. This offer was rejected by defendants and the motion was denied. We think in this there was neither error nor abuse of discretion. For the same reasons it was not incumbent upon the court to reopen the case for the later taking of Pape's testimony.

■ In September, 1953, the plaintiff had taken Pape's deposition for discovery purposes. At the trial defendant offered in evidence this deposition. It was marked as an exhibit and received subject to a later ruling of the court as to its admissibility and the deposition appears in the printed record. As the opinion of the trial court shows, it was held that the deposition was inadmissible because it was taken by plaintiff for discovery purposes only. Rule 26(d) (3) Fed.Rules Civ.Proc., 28 U.S.C.A., provides that the deposition of a witness, whether or not a party, may be used by any party if the witness is out of the United States, unless it appears that the absence of the witness was procured by the party offering the deposition. Since Pape, who presumably knew of the date of the trial, voluntarily left the United States, and as the trial court found, wilfully absented himself, the court's refusal to consider the deposition may well have been in accordance with the provisions of the Rule. However, a reading of the deposition suffices to show that the refusal to receive it in evidence was not prejudicial for there is nothing in the deposition which has any bearing whatever upon the two primary issues which the court was required to consider, namely, was the ground vacant when plaintiff

made his locations, and did plaintiff properly discover and locate his claims.

Substantially all of Pape's deposition had to do with his account of certain work and improvements upon certain access roads in the vicinity of the claims. As nothing in the case turns upon whether Pape did or did not perform the annual assessment work, it is plain that the contents of his deposition were wholly unimportant.

The record shows that Flynn was a Canadian citizen and appellants assert that this disqualified him to locate mining claims in Alaska. As this was not an action in support of an adverse claim and the United States was not a party to the suit, the contention is without merit under the rule of McKinley Creek Mining Co. v. Alaska United Mining Co., 183 U.S. 563, 572, 22 S.Ct. 84, 87, 46 L.Ed. 331, that the location by an alien is "free from attack by anyone except the government."

Finally, appellants argue that since they incorporated in their answer what they called "a fourth defense and counterclaim", plaintiff's failure to reply thereto constituted an admission of the allegations of that part of the answer. With respect to this we agree with the trial court that the allegations of this fourth defense and counterclaim, which were incorporated from similar allegations in the so-called third defense, were merely denials in affirmative form of the allegations of the complaint. Said the trial court: "Obviously, by incorporating such allegations into what is denominated a defense and counterclaim, the defendant may not compel the plaintiff to repeat, in negative form in a reply, the allegations of his complaint, and hence, I conclude that the failure to file a reply in the instant case does not constitute an admission under rules 7(a) and 8(d) F.R.C.P." This ruling is in conformity with the express provisions of Rule 8(c), F.R.C.P. as follows: "When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation."

It is true that the defendants appended to their so-called fourth defense and counterclaim an allegation that in consequence of the actions of plaintiff they were damaged in the sum of five million dollars by way of loss of profits besides treble that amount as exemplary damages. Under Rule 8(d) allegations as to amounts of damages are never admitted through failure to deny. The effort of the appellants to produce testimony as to damage suffered was wholly frivolous and wanting in substance.

We find no error in the judgment of the court and accordingly the same is affirmed.

On Petition for Rehearing.

PER CURIAM.

In their petition for rehearing, which in general is but a restatement of the contentions made in their original briefs, appellants assert that this court overlooked the fact that the trial court found the descriptions in the location certificates for three of defendants' claims (three Beach claims) to be sufficient. They suggest that we should have held those claims valid.

This Court did not overlook the trial court's exception as to these three claims but expressly referred to it. What appellants overlook is that we approved and sustained the trial court's finding that appellants' locations "were not sufficiently marked on the ground". As we stated, the evidence would warrant belief by the trial judge that the asserted markings of the locations on the ground by Paper "were purely imaginary". This finding alone required a judgment that none of appellants' claims were valid for the reason that they were not, any of them, marked on the ground prior to appellee's locations. The mere fact that the descriptions in the recorded location certificates of three of defendants' claims may have been adequate was unimport-

ant, for a locator may not acquire a claim merely by walking into the recorder's office and filing a location certificate no matter how perfect the description of the location may be.

Another portion of the petition again undertakes to challenge the validity of the trial court's ruling that irrespective of possible defects in appellee's location certificates that question was not involved in this controversy since such an objection was available only to a subsequent locator and that appellants were not in that position.

Appellants overlook the fact that this court's opinion expressly stated that we went farther than the trial court and held that appellee's location certificates were sufficient to satisfy the statutory requirements. Our decision was not dependent upon the point which appellants here attempt to raise.

The petition for rehearing is denied.