C. E. H. McDONNELL, as Trustee in Reorganization of Equitable Plan Company, Plaintiff-Appellee,

v.

Fred TABAH, Defendant-Appellant, and

Lowell M. Birrell, Samuel J. Smiley, Louis A. Schnider, Joseph Leznoff, Harry Workman, Harold J. Simon, Edward I. Daspin, Sol R. Kurlander, Abe Weitzman, Juan F. Aguilar-Leon, Raul De Juan, Joseph W. Crosby, Susan R. Miller, Harry M. Cutler, H. W. Perlmutter, Bell Container Corporation, Synta Corporation, Reg. Trust, Pan American Investment Corporation, Charles Holdings, Inc., Defendants.

No. 190, Docket 27259.

United States Court of Appeals Second Circuit.

Argued Nov. 9, 1961.

Decided Dec. 27, 1961.

732

Edward C. Kalaidjian, New York City (John C. Crawley, Robert S. Stitt, and Thacher, Proffitt, Prizer, Crawley & Wood, New York City, on the brief), for plaintiff-appellee.

Louis Bender, New York City, for defendant-appellant.

Before LUMBARD, Chief Judge, and MEDINA and WATERMAN, Circuit Judges.

## PER CURIAM.

The background of what the trial judge quite properly described as "a bold and outrageous corporate swindle," involving one million fraudulently issued shares of the common stock of Doeskin Products, Inc. is described in the opinions written in connection with certain interlocutory proceedings. See Ferguson v. Birrell, S. D.N.Y., 1960, 190 F.Supp. 506, aff'd sub nom. Ferguson v. Tabah, 2 Cir., 1961, 288 F.2d 665.

Defendant Fred Tabah now appeals from a judgment on the merits, after a non-jury trial, finding appellant not to be a *bona fide* purchaser of 200,000 shares of the common stock of Doeskin Products, Inc., part of the one million shares fraudulently issued as above stated, and adjudicating the cancellation of the 200,000 shares, for which Tabah paid $183,000.00. We find it necessary to discuss only two of the points urged upon us as a basis for the reversal of the judgment; and we shall assume familiarity with the comprehensive and well reasoned opinion of Judge Palmieri in the District Court, reported as McDonnell v. Birrell, 196 F. Supp. 496.

■■ It is claimed that the evidence is not sufficient to support the finding that appellant was not a *bona fide* purchaser of the stock. As a matter of fact the entire transaction with appellant is malodorous from beginning to end. Prior to December 19, 1958, when appellant contracted to purchase the stock, he knew of pending litigation challenging the validity of the entire fraudulent issue; his explanations of how he came to purchase the stock are contradictory and the trial judge properly characterized his testimony as incredible; the terms of the contract of purchase relative to the emoluments appellant was to receive in the managerial position he was to assume when compared to the duties he was to perform, if he chose to do so, cast an atmosphere of suspicion over the entire transaction; his plea of guilty to Count One of the criminal indictment [1] subsequently found against those who had participated in the fraudulent scheme was properly received in evidence and it was material and relevant to the issue of his

1. Paragraph 3(s) of Count One of the indictment, to which appellant pleaded guilty, reads:

"On or about the 16th day of December, 1958, Samuel J. Smiley and Louis A. Schnider, on behalf of Charles Holdings, Inc., and Fred Tabah, on behalf of Pan American Investment Corporation, exe-

cuted an agreement whereby Pan American Investment Corporation was to acquire from Charles Holdings, Inc., 200,-000 of the aforesaid one million shares for a purchase price of $183,000. To their knowledge the purchase price for said 200,000 shares was destined for Lowell M. Birrell."

good faith in purchasing the shares; and, finally, the whole course of appellant's conduct with various members of the conspiracy was clearly admissible in evidence on the question of his alleged status as an innocent purchaser of the stock for value.

 Before his testimony before trial was taken appellant sought delay for the alleged purpose of getting another lawyer; and a similar plea was addressed to the trial judge prior to the commencement of the trial. Continuances, especially in cases of this character, are matters largely resting in the sound discretion of the judge in charge of the proceedings. E.g., MacKay v. American Potash & Chemical Co., 9 Cir., 1959, 268 F.2d 512; Peckham v. Family Loan Co., 5 Cir., 1959, 262 F.2d 422, cert. denied 361 U.S. 824, 80 S.Ct. 70, 4 L.Ed.2d 68; Errion v. Connell, 9 Cir., 1956, 236 F.2d 447; Vevelstad v. Flynn, 9 Cir., 1956, 230 F.2d 695, 16 Alaska 83, cert. denied 352 U.S. 827, 77 S.Ct. 40, 1 L.Ed.2d 49; Druckman v. Forsyth Furniture Lines, Inc., 4 Cir., 1927, 22 F.2d 59. We see no basis for holding there was any abuse of discretion here. Moreover, it is far from clear that these requests for delay were not made in bad faith and in the interest of confusion and disruption of the true course of justice. Such dilatory tactics are not to be condoned; and we think the rulings were correct under the circumstances of this case.

 While it is quite true that, under certain circumstances, counsel cannot be relieved without permission of the court, see United States v. Curry, 1848, 6 How. 106, 47 U.S. 106, 12 L.Ed. 363; Doggett v. Deauville Corp., 5 Cir., 1945, 148 F.2d 881; Lovvorn v. Johnston, 9 Cir., 1941, 118 F.2d 704, cert. denied 314 U.S. 607, 62 S.Ct. 92, 86 L.Ed. 488, there is no requirement of law or common sense that a court compel counsel to continue to represent a former client when there had been a termination of the attorney and client relationship before trial by mutual consent, which is what happened in this case.

Affirmed.