Murray FERGUSON, as Trustee in Reorganization of Equitable Plan Company, Plaintiff,

v.

Lowell M. BIRRELL, Samuel J. Smiley, Fred Tabah, Louis A. Schnider, Joseph Leznoff, Harry Workman, Harold J. Simon, Edward I. Daspin, Sol R. Kurlander, Abe Weitzman, Juan F. Aguilar-Leon, Raul De Juan, Joseph W. Crosby, Susan R. Miller, Harry N. Cutler, H. W. Perlmutter, Clayville Truck Rental Corp., Bell Container Corporation, Synta Corporation Reg. Trust, Pan American Investment Corporation, Charles Holdings, Inc., and Doeskin Products, Inc., Defendants.

United States District Court
S. D. New York.
Nov. 14, 1960.

Order Affirmed April 13, 1961.

See also D.C., 185 F.Supp. 57.

Thacher, Proffitt, Prizer, Crawley & Wood, New York City, for plaintiff; Edward C. Kalaidjian and Robert S. Stitt, New York City, of counsel.

McCarthy, Kapelman & Nathanson, New York City, for defendants Doeskin Products, Inc. and Clayville Truck Rental Corp.

Meyer, Kissel, Matz & Seward, New York City, for defendant Fred Tabah; Lester Kissel, James C. Quigley and James J. Sheridan, New York City, of counsel.

Samuel H. Levinkind, New York City, for defendants Samuel J. Smiley, Louis A. Schnider and Sol R. Kurlander.

Abraham M. Glickman, New York City, as escrowee.

George C. Levin, New York City, for trustees of Swan-Finch Oil Corp., Keta Gas & Oil Co., and Swan Finch Petro Chemical Corp.

Kiva Berke, New York City, and Richard Veron, Brooklyn, N. Y., for Securities & Exchange Commission.

PALMIERI, District Judge.

### Nature of the Action and the Motion for Relief Pendente Lite.

This is a shareholders' derivative action commenced on October 14, 1960 by the Chapter X Trustee of Equitable Plan Company, a California corporation,[1] which holds title to 198,480 shares of the common stock of Doeskin Products, Inc., a New York corporation.[2] As a first claim, plaintiff asserts that 1,000,000 of the 2,500,000 authorized common shares of Doeskin[3] were issued fraudulently and without consideration and should be returned to Doeskin's treasury. These 1,000,000 shares, now held by the defendants Charles Holdings, Inc.,[4] Pan American Investment Corp.[5] and Synta Corp.,[6] are said to have been issued as part of a conspiracy to enable defendant Lowell M. Birrell[7] to maintain control of Doeskin.[8] Other individual defendants

1. Equitable Plan Company is currently a debtor in a reorganization proceeding under Chapter X of the Bankruptcy Act pending in the United States District Court for the Southern District of California. The Trustee has instituted this action pursuant to order of the bankruptcy court. See Order No. 86,096–T, Order for Authority to Initiate Stockholders' Derivative Action against Doeskin Products, Inc. and Others, S.D.Calif., Oct. 14, 1960.

2. It is not disputed that the Trustee has in his possession certificates evidencing Equitable Plan's ownership of 198,480 shares of the common stock of Doeskin. Defendants' bare assertion that all or a substantial part of the shares claimed by plaintiff were issued without the authorization of Doeskin's board of directors is not supported by any proof now in the record. I therefore conclude that the plaintiff has made a prima facie showing of his standing to institute this action.

3. Of the 2,500,000 authorized shares of common stock, par value $1 per share, 2,499,670 shares are issued and outstanding with 70,000 shares held as treasury stock. Doeskin also has 50,000 authorized and outstanding shares of preferred stock, par value $8.50 per share, of which 3,744 are held in its treasury.

4. Charles Holdings, Inc., record owner of 200,000 of the million disputed shares, is a Quebec corporation, owned five-sixths by defendant Smiley and one-sixth by defendant Schnider.

5. Pan American Investment Corp., holding 200,000 of the million disputed shares, is a Quebec corporation owned by defendant Tabah and other members of his family.

6. Synta Corp. Reg. Trust, a Liechtenstein corporation, is said to hold the balance of the disputed shares. Pursuant to an agreement between Synta and Charles Holdings, Inc., the latter has a right to vote the shares and Synta may not sell, pledge or hypothecate its shares without the consent of Charles Holdings, Inc. Defendants Smiley, Schnider and Tabah disclaim knowledge of the identity of the beneficial owner of Synta.

7. Defendants concede that Lowell M. Birrell, former Chairman of Doeskin's board, stole over $10,000,000 from the company. See affidavit of defendant Louis Schnider, Executive Vice President of Doeskin, p. 5, Oct. 26, 1960.

8. Plaintiff claims that pursuant to Birrell's direction and for his benefit 1,070,-000 shares of Doeskin common stock were issued at Havana, Cuba, in Sept. 1957 and that other defendants named in the complaint acted as Birrell's fronts or nominees.

named as co-conspirators are past and present officers and directors of Doeskin, among them a majority of Doeskin's present board. As a second claim, plaintiff alleges that, in disregard of their fiduciary obligations as officers and directors, named individual defendants knowingly countenanced and participated in specified fabricated and fraudulent transactions which caused the misappropriation of Doeskin funds in an amount exceeding $700,000. In this motion for interim relief, plaintiff seeks the appointment of a receiver with power to conserve Doeskin's assets during the pendency of the action.

### The Cross-Motion for a Stay.

In addition to their claim that plaintiff has failed to establish a basis for the requested interim relief, defendants, by way of cross-motion, seek a stay of this suit pending disposition of a shareholders' suit commenced in the state court in April, 1958.[9] Defendants have demonstrated a substantial degree of identity between the acts complained of here and in the state court, at least with respect to the first claim asserted by the Trustee for Equitable Plan. However, there are extraordinary and compelling factors present in this case which militate against the course suggested by defendants.

### The Prior Action Pending in the State Court.

■ The proceeding now pending in the state court, Weinberger v. Bradley, Index No. 7984–1958 (Sup.Ct., N.Y.Co.), stems from the consolidation of three stockholders' derivative actions commenced against Doeskin's officers and directors. Pursuant to the consolidation order, a General Counsel was appointed to represent all plaintiffs who had filed actions in the state court. The combined shareholdings of such plaintiffs totaled some 3,000 shares. On March 10, 1960, defendants Schnider, Smiley, and Tabah submitted an offer of compromise to the General Counsel. The offer provided that defendants would surrender 250,000 of the 1,000,000 disputed shares to Doeskin to be held as treasury stock in exchange for general releases. By virtue of the proposed general releases the title of defendants Charles Holdings, Inc., Pan American Investment Corp., and Synta Corp. to 750,000 of the disputed shares would be validated.

A Referee was appointed by the state court to take testimony and report on the reasonableness and adequacy of the proposed settlement. Some thirty hearings were held by the Referee and approximately 2,000 pages of testimony were taken during the period from March 11, 1960 until September 8, 1960. On September 8, 1960 the Referee filed a report recommending approval of the compromise offer as in the best interests of Doeskin and its shareholders. A hearing was held before the state court on October 5, 1960 at which time decision was reserved on a motion to confirm and a cross-motion to reject the Referee's report. The Trustee for Equitable Plan has vigorously and consistently opposed the proposed compromise of the state court action.

Plaintiff here has not asserted that the proposed settlement emanated from a collusive arrangement among the parties in the state action. He does assert that prosecution of the derivative action in the state court and the attendant investigation of the activities of Doeskin's present management were abandoned too rapidly as a result of the General Counsel's ready endorsement of the compromise offer. In other words, the plaintiff opposes termination of the derivative action as premature, urging that the terms of the settlement would redound to the benefit of those who are responsible for the decline in Doeskin's business and financial condition and seriously dilute

---

9. Defendants Schnider and Tabah have been given leave to join in this cross-motion filed by defendants Doeskin Products, Inc. and Clayville Truck Rental Corp.

the substantial shareholder interest of Equitable Plan.[10]

### Factors Bearing Upon the Exercise of this Court's Discretionary Power to Stay Its Hand.

The apparently irreconcilable divergence of opinion between General Counsel and the Trustee of Equitable Plan as to the best interests of Doeskin and its shareholders has been brought to the attention of the state court in connection with the applications pending there and my determination should not affect that court's independent consideration of the matter. However, in view of the substantial claims of unchecked misconduct and mismanagement asserted in the complaint now before me, I deem it the better exercise of discretion to allow the continuance of the action brought in this forum despite the pendency of the state court action. See Kaufman v. Baker, App.Div., 1st Dep't, 206 N.Y.S.2d 320. Since discovery procedures are not being pursued in the state court action, I would be loath to issue any order which would deny to Equitable Plan the immediate benefit of federal procedures for pretrial examination and investigation. Nor do I wish to abort the Trustee's opportunity to show that a number of misdeeds alleged here have not been considered in the state court litigation.[11] Moreover, I am mindful of the position

taken by the Securities and Exchange Commission, appearing before me as amicus curiae.[12] The Securities and Exchange Commission urged that a Chapter X Trustee stands in a somewhat different position from that of the ordinary shareholder who might seek to maintain in a federal forum the type of action now presented. It was pointed out that the Trustee holds approximately sixty-five times as many shares as those held by plaintiffs in the state court action, that this action was instituted pursuant to authorization of the bankruptcy court, and that it is a policy of the Bankruptcy Act to further the rehabilitation of the debtor and the interests of its creditors and shareholders by encouraging and facilitating the diligent prosecution of the debtor's claims by the court-appointed Trustee. Cf. Williams v. Austrian, 1947, 331 U.S. 642, 67 S.Ct. 1443, 9 L. Ed. 1718. In addition, the principal factor supporting abstention in favor of another pending proceeding—the policy against multiplicity—is present here only to a limited extent. This is not a case of harassing litigation; only two suits are pending and no special difficulty should be encountered if both are permitted to proceed. See Kaufman v. Baker, App.Div., 1st Dep't, 206 N.Y.S.2d 320; cf. Mottolese v. Kaufman, 2 Cir., 1949, 176 F.2d 301 (stay granted where

---

10. In view of the heavy burden involved in prosecuting a derivative action, plaintiff-stockholders who "initiate suit with laudable intentions," may be tempted to yield to an attractive settlement offer "which will frustrate legitimate corporate claims." The unfortunate result of effecting such a settlement is not mitigated by the plaintiffs' good intentions at the time suit was commenced. Note, Power to Stay Federal Proceedings Pending Termination of Concurrent State Litigation, 59 Yale L.J. 978, 985 n. 29 (1950).

11. The different situations of the plaintiffs in the two actions and the fact that the lists of parties-defendant are not identical are also factors worthy of consideration.

12. Following an inquiry by the Securities and Exchange Commission into the cir-

cumstances surrounding the issuance of the disputed shares by Doeskin, Paul Windels, Jr., as Regional Administrator for the Commission, concluded that "there is serious question as to the due issuance of these shares." He advised Doeskin and defendants 'Smiley and Schnider, among others, by letter dated April 23, 1958, that the questionable nature of the issuance "should be disclosed by the holder * * * before selling to any purchaser in this country." Mr. Windels stated that, in his opinion, failure to make such a disclosure would constitute a violation of section 17 of the Securities Act of 1933, 15 U.S.C.A. § 77q. In addition, he noted his view that any sales of these shares in the United States without registration would constitute a violation of section 5 of the Securities Act, 15 U.S.C.A. § 77e.

nine previous suits had been brought in the state court with respect to the same matters, most of them by the same attorneys who subsequently initiated two actions in the federal court).

## Disposition of Cross-Motion.

In formulating a resolution of the problem raised by the cross-motion, I have given extensive consideration to two policies which, in the nature of our federal system, sometimes point in opposite directions: first, the interest in avoiding an unseemly conflict with a court of concurrent jurisdiction; second, the interest in protecting the statutory right of a litigant to invoke the jurisdiction of this court. See Landis v. North American Co., 1936, 299 U.S. 248, 255, 57 S.Ct. 163, 81 L.Ed. 153; Kline v. Burke Construction Co., 1922, 260 U.S. 226, 230, 43 S.Ct. 79, 67 L.Ed. 226; Brendle v. Smith, D.C.S.D.N.Y.1942, 46 F.Supp. 522, 526; Note, 59 Yale L.J. 978 (1950). In view of the peculiar exigencies of this case, I have concluded that plaintiff should not be stayed from proceeding in this forum, at least with respect to pre-trial activity.[13] The question whether adjudication on the merits should be stayed need not be determined at this preliminary stage in the litigation. Disposition of the issue should await further developments here and in the state court.

## Motion for the Appointment of a Receiver Pendente Lite.

Plaintiff maintains that unless defendants' control is immediately broken by the appointment of a receiver for the monies, assets and property of Doeskin, that company will continue to be dissipated and depleted through the fraud and mismanagement of its officers and directors. Plaintiff bases its application in large part on information received in ancillary proceedings for the examination of witnesses in this court, pursuant to § 167 of the Bankruptcy Act, 11 U.S. C.A. § 567. In the course of such examinations, plaintiff has had access to the financial statements, books of account, and other records of Doeskin Products, Inc., and similar records of certain Doeskin suppliers and contractors. Plaintiff has also examined orally a number of Doeskin's present and past officers and directors.

The facts disclosed in the affidavits, documentary exhibits and hearings held in connection with this application for interim relief reveal that there are substantial grounds for the plaintiff's claim that the steady deterioration of the business of Doeskin and the erosion of its liquid assets can be attributed to the implementation of corporate management decisions contrary to the best interests of the corporation and in derogation of the rights of the stockholders. It appears probable that the plaintiff Trustee can prove that these decisions were inspired by suggestions emanating from sources outside the United States. While on the present state of the record it would be surmise to say that Lowell M. Birrell is himself the chief protagonist, it is nevertheless probable that he has been privy to these unfortunate corporate actions. In sum, I am of the opinion that the showing made by plaintiff[14] is sufficient to entitle Doeskin's shareholders to some protection against

---

13. It is not to be assumed, in the absence of a specific provision therefor, that the stay directed by the state court in its consolidation order of June 27, 1958, was intended to bar the commencement of an action in the federal court. See 2 Story, Equity Jurisprudence 581 (14th ed. 1918); Note, State Injunctions Against Proceedings in the Federal Courts, 90 U. of Pa.L.Rev. 714 (1942); cf. Kline v. Burke Construction Co., 1922, 260 U.S. 226, 230, 43 S.Ct. 79, 67 L.Ed. 226. See also text following note 12, supra.

14. A critical examination of the recent financial reports of Doeskin justify the conclusion that this large company, with excellent commercial potential, has steadily lost ground, and that if this trend were to continue unchecked, a serious financial stringency, if not insolvency, could ensue.

loss or diversion of corporate assets during the pendency of this action.[15]

The issue of the appointment of a court officer charged with a duty to scrutinize and report on Doeskin's business and financial condition is not now before the state court. I therefore believe that it would be inappropriate to withhold relief merely by reason of the pendency of the prior action. Nor am I aware of any authority which construes the policy of intergovernmental comity to require federal abstention on these facts. Cf. Hart & Wechsler, The Federal Court and the Federal System 1082–85 (1953).

It is well recognized that a court of equity has jurisdiction to grant the appointment of a receiver on a shareholder's petition for the purpose of conserving corporate assets and supervising corporate business. It is also clear that solvency of the corporation is not a bar to such an appointment. See Burnite Coal Briquette Co. v. Riggs, 1927, 274 U.S. 208, 47 S.Ct. 578, 71 L.Ed. 1002; Tower Hill-Connellsville Coke Co. v. Piedmont Coal Co., 4 Cir., 64 F.2d 817, 91 A.L.R. 648, certiorari denied, 1933, 290 U.S. 675, 54 S.Ct. 93, 78 L.Ed. 582.

However, I am well aware of the drastic nature of this remedy and its possible adverse effect on corporate business. See Baker & Carey, Corporations 706 (1959). Therefore, I have determined to reserve decision on the request for the appointment of a receiver, cf. Deckert v. Independent Shares Corp., 1940, 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189, and, at this time, to follow a less stringent course designed to preserve the status quo pending further consideration of the questions raised by the complaint. It is my conclusion that a court officer designated as "special fiscal agent"[16] for Doeskin be appointed with

full power and authority to check the propriety of all disbursements to be made or proposed to be made by or on behalf of Doeskin. My order shall provide that if the appointed court officer should challenge or question the appropriateness of any item of disbursement, he shall report his challenge to the responsible officer or director. Upon receipt of such a report, the officer or director involved must withhold further action unless he obtains the approval, in writing, of the "special fiscal agent." However, the officer or director may, if he is so advised, apply to this court for relief with respect thereto, notwithstanding the views of the "special fiscal agent." The order shall also provide that, should subsequent developments indicate the need for a more drastic course, plaintiff, or the court-appointee himself, may seek amplification of the "special fiscal agent['s]" powers, or, plaintiff may renew his request for the appointment of a receiver for Doeskin with full custodial and supervisory powers. See Roach v. Margulies, 1956, 42 N.J.Super. 243, 126 A.2d 45, 46.

### Conclusions.

1. Defendants' cross-motion for a stay of all further proceedings is denied. Decision is reserved on the question of a stay of adjudication on the merits.

2. Plaintiff's motion for relief *pendente lite* is granted to this extent:

(a) A "special fiscal agent" shall be appointed with circumscribed powers and duties as outlined above. Decision is reserved on the application for a receiver with full custodial and supervisory powers;

(b) The escrowee, holding the 250,000 shares of common stock of Doeskin Products, Inc. pursuant to the settlement

15. Cf. Falk v. Hoffman, 1922, 233 N.Y. 199, 202, 135 N.E. 243, 244 ("Equity will not be overnice in balancing the efficacy of one remedy against the efficacy of another, when action will baffle, and inaction may confirm, the purpose of the wrongdoer.").

16. This designation was employed by the court in Roach v. Margulies, 1956, 42 N.J.Super. 243, 126 A.2d 45, 46, in dealing with a problem similar to the one presented here.

offer made in the state court action, shall be enjoined from yielding or relinquishing his possession, custody and control of such shares and from allowing, permitting or causing such shares to be or remain outside of this District. Should the escrowee receive directions from the New York Supreme Court with respect to these shares, he shall apply to this court for an appropriate modification of the order to be entered herein.

Submit order in accordance herewith.